STATE of Missouri, Respondent,

v.

Jimmy Wayne BLANK, Appellant.

No. WD 37105.

Missouri Court of Appeals,
Western District.

Dec. 17, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and
Denied Jan. 28, 1986.

Application to Transfer Denied
March 25, 1986.

Roger M. Prokes, Strong, Strong &
Prokes, Maryville, for appellant.

William L. Webster, Atty. Gen., Philip M.
Koppe, Asst. Atty. Gen., Kansas City, for
respondent.

Before NUGENT, P.J., and SHANGLER
and MANFORD, JJ.

SHANGLER, Judge.

The defendant Blank was charged by information with two offenses: Count I was framed as a class C felony of stealing property of the value of $150 or more. Count II was framed as a class B misdemeanor for attempting to steal a barrel of copper wire. The offenses were tried to the court, and the defendant Blank was convicted of both offenses. The court imposed concurrent sentences: two years imprisonment on the felony stealing conviction, and 180 days in the county jail on the misdemeanor attempting to steal conviction.

The defendant contends there was no substantial evidence to convict for the felony stealing on Count I, and that the punishment imposed for the misdemeanor attempt on Count II exceeds any sentence the law allows. We modify the sentence on Count II and, as modified, affirm the convictions.

The charges lodged against Blank were for the theft and attempted theft of property from the Wray Salvage Yard. On December 19, 1984, Henry Wray, yard proprietor, reported to the county sheriff that some radiators were taken from the yard area, and also sets of tires and wheels from a truck on the premises. The tires and wheels had a combined value of $400. On January 31, 1985, at about 10 p.m., he saw

the tires and wheels on a vehicle parked on the west side of the salvage yard. The vehicle was owned by defendant Blank. Wray reported a prowler to the sheriff, and deputy Knisely responded.

There had been a snowfall, and the area was covered. The salvage yard was bordered on two sides by two roads which intersected there. The road areas had been cleared of snow. The officer arrived at the salvage yard and met with Wray and his son. There were footprints in the snow which lead from the roadway into an area where copper wire and salvage had been stored in a paper barrel. They followed the footprints, and the barrel appeared to have been moved to the edge of the roadway, some thirty or more feet away. The officer described two sets of footprints, one from tennis shoes, and the other from overshoes. He continued to follow the prints over the rise of a hill, and found where "someone had set down or layed down in the snow and changed out of a pair of overshoes." The officer then found the overshoes in the vicinity. They continued to follow, and encountered Blank. Officer Knisely asked Blank what he was doing there, and Blank told him he was hunting coon. The officer noticed that Blank had neither a weapon nor any lights essential for such a nocturnal activity. The tennis shoes Blank then wore, the officer noticed, had the same distinctive sole markings as were imprinted on the snow.

Wray identified the wheels and tires on the Blank pickup as those taken from his yard. He ascribed a $400 value. He identified the barrel of copper remnants as his property, and ascribed a $75 value. Wray testified that he had purchased the vehicles from which the wheels and tires were taken in the state of Nebraska, and comprised "two traction tires and two straight-tread tires." They were marked with serial numbers, but he had not recorded them. Wray had the serial numbers of his tires of that kind and knew the numbers from the stolen tires were the same except for "the last three numbers on them" The stolen tires were of the Goodyear manufacture. Wray testified also that the missing wheels upon which the tires were mounted were taken from a Chevrolet pickup truck. These rims were silver-white, but were not marked with serial numbers.

Wray testified also that on the night the radiators, tires and wheels were stolen, and reported—on December 19, 1984—he noticed a brown and white Chevrolet pickup truck at the salvage yard. The night a barrel of copper salvage was removed from the salvage yard to the edge of the road, on January 31, 1985, and Blank was apprehended, that same brown and white Chevrolet pickup was found to belong to the defendant Blank. That pickup on that night was fitted with the wheels and tires Wray identified were stolen from his premises. Wray was confirmed in that identification, he said, because they were Goodyear tires—a manufacture rarely seen in the area: "You go out here on the street, you won't find two pickups in Nodaway County [the site of the crimes] with Goodyear's tires on them or anywhere else on them, or anywhere else around. There's no dealers for Goodyear's."

The defendant does not contest the sufficiency of the evidence to convict for the Count II misdemeanor attempt to steal. The defendant does contend that there was no evidence to "tie" him to the theft of the tires and wheels from the Wray premises, and that the inability of Wray to identify as his own the tires and wheels found on the Blank pickup truck confirm that the felony conviction on Count I for stealing that property was without basis in the evidence.

The case was tried to the court. Our review function of a judgment entered in a jury-waived criminal case is the same as of a judgment entered on a jury verdict. *State v. Koetting*, 691 S.W.2d 328, 329[1] (Mo.App.1985). We determine whether any rational trier of fact could have found a verdict of guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). In that exercise, we accept as true all evidence and inferences in support of the verdict—whether direct or circumstan-

tial—and disregard the contrary evidence. *State v. Turner*, 623 S.W.2d 4, 6[1, 2] (Mo. banc 1981). We accord to the findings of the trial court the same deference due a jury verdict. *State v. Isom*, 660 S.W.2d 739, 740[1] (Mo.App.1983). Thus, we limit review to whether the findings are supported by substantial evidence [*State v. Koetting*, supra, 691 S.W.2d at 329–330]— evidence from which a rational trier of fact could have determined the issue. *State v. Sherrill*, 657 S.W.2d 731, 737[15–16] (Mo. App.1983).

The trial court entered findings for the judgment of guilty on both counts, for the felony stealing as well as for the misdemeanor attempt to steal. The court expressly disbelieved the testimony of the defendant that he was afoot in the snow in the area at that time of night on a hunt for coons—without a gun, without a dog, or any other usual paraphernalia of the sport. There was evidence that the defendant had been convicted of burglary in Nebraska, and that fact may have abetted the court to the unwillingness to believe his testimony.

As to Count II, the misdemeanor conviction, the court expressly found that the barrel of copper wire was moved toward the roadway for the obvious purpose of asportation, and that the sheriff tracked down the defendant as the perpetrator. That conviction is not the subject of appeal, although the term of sentence is.

■ As to Count I, the felony conviction, the express findings of the court and the other inferences from the evidence consistent with the judgment of guilt determine: The wheels and tires taken from the Wray yard in December of 1984 had come from a Chevrolet pickup truck, they were purchased from the state of Nebraska, and are commodities of the Goodyear manufacture rarely seen in the vicinity because that brand is not marketed in the area. The wheel rim was a distinctive silver-white used on Chevrolet pickups, and the tires were a combination of traction and straight-tread. On the night in December of 1984 when the wheels and tires were stolen, a brown and white Chevrolet pickup

was seen and reported to the office of the sheriff. The truck owned by the defendant Blank and found at the area of the salvage yard in January of 1985 was a brown and white Chevrolet pickup. The wheels and tires on the pickup were exactly of the kind stolen from the salvage yard—and rarely seen in the vicinity—and matched the serial numbers of the other tires of that kind in his inventory, except for the last three numerals. This suffices as proof on substantial evidence that the Blank pickup was the vehicle seen on the December night when the wheels and tires were stolen, and that the wheels and tires on the Blank vehicle on the January night when he was apprehended were property owned by Wray and stolen by Blank. That evidence suffices for a rational trier of fact to have found guilt of the offense beyond a reasonable doubt.

■ The defendant nevertheless challenges the significance of the identification testimony of witness Wray. He had testified that the stolen tires were Goodyears on eight-bolt white Chevrolet rims. Wray testified the rims [as well as the tires] found on the Blank pickup were his. Counsel then asked on cross-examination: "But if they would be put in a pile of say, a hundred rims, white, eight-bolt Chevy rims you couldn't identify them as yours?" To which Wray responded: "No, sir." The defendant seems to argue that the response completely undermines the identification of the property by Wray as his. Of course, the hypothesis the question poses assumes premises different from those on which the Wray identification rests. Wray did not pick out tire rims from a pile of a hundred to identify them as his. His identification rests on a conjunction of facts and inferences, reciprocally corroborative: the ownership of rims and tires suited for use on a Chevrolet pickup and of a manufacture not usually seen in the geographical vicinity; the stealth of that property on a night when a brown and white Chevrolet pickup was seen nearby; the detection of that same brown and white Chevrolet pickup the following month—a vehicle owned

by the defendant and brought there by the defendant in order to steal and transport property from the same salvage yard from which the wheels and tires had been stolen; the presence of Goodyear-tired silver-white rims on the Chevrolet pickup owned by the defendant, and of the kind and manufacture stolen from the salvage yard, and identified, within three numerals with the characteristic serial sequence. Whatever the import of the Wray response that he would not be able to identify as his own one white eight-bolt Chevrolet rim from among one hundred others, that testimony goes to the weight of his identification evidence—a weight accorded favor by the judgment of the trier of fact. *State v. Rhodes*, 591 S.W.2d 174, 177[6] (Mo.App. 1979).

The essential issue is governed by *State v. Stark*, 590 S.W.2d 690 (Mo.App.1979). That case involved the theft from a Mustang of G70 x 14 Goodyear tires mounted on "mag" wheels. The Mustang was brought into a service station and left there. Nearby was a mobile home where the defendant stopped for water for the radiator of his station wagon. The defendant hailed the driver of the Mustang as he drove by. The station wagon, when then seen, was equipped with neither mag wheels nor G70 x 14 tires. Some twenty minutes later, the Mustang was discovered bereft of two rear mag wheels and tires. The next day the defendant was arrested while driving his station wagon on which were mounted on the rear, two G70 x 14 Goodyear tires on mag wheels. The girl-owner of the Mustang positively identified the mag wheels and tires as those taken from her car. Her stepfather [Miles] who purchased the car for her also identified the wheels and tires as those taken from the Mustang. He testified that he had become sufficiently acquainted with the property from fixing a number of flats on the tires. The court sustained conviction on this evidence of identification of the property stolen although there was no record of serial numbers or other distinctive marks. There, as here, the defendant testified he had purchased the property

legitimately. The court noted that the evidence of identification, as well as the narrative as to how the property came to be in the possession of the defendant, were for the trier of fact.

■ The defendant does not contest the sufficiency of the evidence to convict for the attempt to steal the barrel of copper wire—the gist of count II. He contends, however, that the 180 day commitment to the county jail was a sentence in excess of the maximum allowed by law for the offense. The value of the copper wire was given as $75, therefore the accomplished theft of the property would have constituted a class A misdemeanor. § 570.030.3, RSMo Cum.Supp.1984. An attempt to commit a misdemeanor is punishable as a class C misdemeanor, for a term not to exceed 15 days. §§ 564.011.3(5) RSMo 1978 and 570.-030.3. The formal information, by misadventure, charged count II as a class B misdemeanor, and the judgment of court—which convicts for the offense and imposes the maximum punishment of 180 days—continues the error.

The defendant was found guilty of both offenses, and we affirm both convictions. The sentences, as formulated, were imposed by the court as concurrent terms. It is evident that the trial court intended to impose the maximum sentence the law allows for the misdemeanor conviction under count II. The lawful maximum the offense actually committed allows, however, is 15 days, and not the 180 days the judgment in count II imposes. The correction of that error does not require a remand, but may be entered by the court of review. Rule 30.23 provides:

> A judgment shall not be reversed or set aside because it was erroneous as to the time or place of imprisonment. In such case the appellate court shall sentence such person to the proper place of confinement, and for the correct length of time . . . .

*City of Independence v. Peterson*, 437 S.W.2d 168, 170[7] (Mo.App.1968). The judgment on count II is modified to impose

a sentence of 15 days in the county jail, to run concurrently with the two year sentence imposed on count I.

The judgments and convictions are affirmed as modified.

All concur.