STATE of Missouri,
Plaintiff–Respondent,

v.

Sylvester R. HORNBUCKLE,
Defendant–Appellant.

No. 52751.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 26, 1988.
Rehearing Denied March 15, 1988.

Mary Clare McWilliams, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Karen Ann King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SIMEONE, Senior Judge.

This is an appeal by the appellant, Sylvester R. Hornbuckle, from a judgment of conviction, following a jury trial, for robbery first degree, attempted kidnapping (two counts), armed criminal action, attempted stealing of a motor vehicle, carrying a concealed weapon and making a false declaration. He was found to be a prior offender and sentenced to a total of seventy-three years in the Department of Corrections and Human Services. Appellant alleges several grounds of error. We affirm the judgment but modify the sentence of one year imposed for making a false declaration, and in lieu thereof impose a sentence of six months, under the same conditions as imposed by the trial court. Rule 30.23; *State v. Blank*, 705 S.W.2d 56, 59 (Mo.App.1985); §§ 575.060.5, 558.011.1(6), R.S.Mo.1986.

## I.

On the evening of February 3, 1986, Mrs. Dolores Truemper and her two children, Allison, age two and Sarah, age eleven, went shopping at a Venture Store located at 4930 Christy Avenue in the City of St. Louis. Mrs. Truemper parked her vehicle on the parking lot. When she completed her shopping, she and her daughter returned to her car at about 9:30 p.m. She took her packages out of the shopping cart and placed them in her vehicle, went to the passenger side and placed the two-year old on the seat and buckled the seat belt. She told Sarah to take the "cart" across the lot "to the holding area." She then "went around" to the driver's side and started "getting into the car." In the process of entering her vehicle, a "man came towards me" and "pushed" her into the car. He held a .38 snub nose revolver to her side. The man, later identified as appellant, entered the driver's seat, told Mrs. Truemper

to move over, closed the door, all the while holding the gun on her. She pleaded "not to do anything"—"I had my baby here." She tried to roll down the window and "started yelling for help." The appellant demanded that she give him her two rings—one an opal, and the other a gold wedding band. She complied. Meanwhile Sarah had returned from taking the shopping cart to the hold area, and when she returned she saw "someone push my mom into the car," and her "mom screaming." She ran back to the store and alerted a security police officer, William (Billie) Atkins. They both returned to the Truemper vehicle, and the officer observed appellant seated behind the steering wheel. He "suspected something afoul," pulled out his service revolver and ordered appellant out of the car. When appellant removed himself from the car, he "made a motion back with his right hand," and the officer handcuffed him. At the time appellant made the motion, a "knife fell from his belt," or "from his hand." Atkins testified that appellant had a "knife holder in his belt." The officer then took appellant to the store's security office. At the office one of the rings was retrieved from appellant's trouser pocket. The other ring, although searched for, was never found. The officer later returned to the vehicle and found a fully loaded, cocked, ".38 caliber revolver, snub nose" underneath the front driver's seat.

Two eyewitnesses saw Mrs. Truemper in trouble, heard her call for help and heard appellant tell her to "be quiet." One witness testified that he saw appellant "have a knife." Mrs. Truemper also saw a "knife that was on the ground."

Appellant was eventually taken to the police station where he gave a false name. It was later determined that his real name was Hornbuckle.

On March 4, 1986, appellant was indicted by the grand jury on the seven counts. On September 24, 1986, the Assistant Public Defender assigned to represent appellant filed two motions when the cause was assigned to the trial judge, Honorable Charles D. Kitchin. One motion was entitled "Motion For Order Disqualifying The Honorable Charles Kitchin and Transferring This Cause to Another Judge of the 22nd Judicial Circuit." This motion was made pursuant to Rule 32.09 and "§ 545.-660(3), RS Mo 1978." As grounds therefor, the motion alleged that "The Honorable Charles Kitchin is so prejudiced against defense counsel that Defendant cannot receive a fair trial." An affidavit was attached to this motion. The affidavit stated that the facts "in the foregoing motion are true to the best of [appellant's] knowledge" and that the court is "prejudiced against his counsel. Specific evidence demonstrating the court's prejudice is outlined in Defendant's Motion for Reversal [recusal?] and Request for Evidentiary Hearing which is incorporated herein by reference."

The second motion filed on the same date was entitled "Verified Motion For Recusal And Request for Evidentiary Hearing." This motion, filed, pursuant to § 545.660(3), R.S.Mo. [not Rule 32.09], moved the court to recuse himself in the cause for the reasons that Judge Kitchin was prejudiced against members of the Public Defender's Office. The motion prayed that the court recuse himself from presiding over any trial or hearing in this cause.

Various exhibits were attached to the latter motion, some of which were orders of Judge Kitchin involving other causes.

After these motions were filed, and on September 26, 1986, Judge Kitchin made an order stating that the cause has been assigned to his division for Monday, September 29, 1986, but that motions

filed with the case request a change of judge ... purportedly under Supreme Court Rule 32.09 & Section 545.660, RSMo. The allegations in said motion can also be treated as a request for change of judge that meets the requirement of Supreme Court Rule 32.07....

Judge Kitchin in his order then stated that the

Court will treat this as an application for change of judge under Supreme Court Rule 32.07 and, as such, it is hereby sustained. Cause reassigned to Division 16 for further proceedings.

These two motions—motion for "disqualification" and motion for "recusal and request for evidentiary hearing" were therefore treated as a "motion for change of judge" under Rule 32.07, and were sustained.

When the cause was then reassigned to another judge, Judge Brendan Ryan, who eventually heard the trial of this cause, defense counsel filed a "Motion For Change of Judge" pursuant to Rule 32.07 and § 545.650, R.S.Mo. Judge Ryan denied this motion and noted that "according to Judge Kitchin's order of September 26, 1986, defendant has already filed and had sustained the one Motion for Change of Judge he is entitled to under Rule 32.07."

Eventually the cause was tried in December, 1986. During the trial the above facts relating to the incident were detailed by the victims and witnesses. After a motion for new trial was overruled and allocution granted, appellant was sentenced.

## II.

On appeal, appellant seeks a reversal of the judgments and makes three points: (1) that Judge Kitchin abused his discretion and committed reversible error by "refusing" to rule on appellant's verified motion for recusal, "pursuant to Supreme Court Rule 32.09 [1] and Section 545.660.(3)," and by electing to treat the verified motion as one for change of judge under Rule 32.07, thereby avoiding ruling on the motion, so that his actions foreclosed appellant from exercising his peremptory right to change of judge before Judge Ryan; (2) the court erred in sentencing appellant to a term of one year on Count VII—making a false declaration to a police officer—be-

cause § 575.060 is a class B misdemeanor and under § 558.011.1(6), the maximum punishment is six months; and (3) the court erred in overruling appellant's motion for acquittal as to Count VI—"unlawful use of a weapon under § 571.030.1(1)" because no direct evidence was produced as to concealment, the state did not show that the weapon was concealed about his person and did not show that there that there was an intent to conceal.

A supplemental brief was filed by counsel at the personal request of appellant, alleging that the points also violated appellant's rights to due process under the United States' and Missouri Constitutions.

## III.

As to his first point, appellant argues that Judge Kitchin refused to disqualify himself pursuant to § 545.660(3) and Rule 32.09, and treated the motions as ones for change of judge under Rule 32.07 thereby foreclosing appellant of his "right" to one change of judge from Judge Ryan.[2] He relies upon Rule 32.09, §§ 545.650 and 545.660(3) and *State v. Euell*, 583 S.W.2d 173 (Mo. banc 1979); *State v. Berry*, 637 S.W. 2d 415 (Mo.App.1982) and *State ex rel. O'Brien v. Murphy*, 592 S.W.2d 194 (Mo. App.1979).

The resolution of appellant's first contention requires an examination of the pertinent Rules and statutes.

Rule 32.07 provides, in pertinent part, that

(a) A change of judge shall be ordered upon the filing of a written application therefor by any party. The application need not allege or prove any reason for such change. The application need not

---

**1.** Rule 32.09 was not mentioned as a basis in this verified motion; appellant relied only upon § 545.660(3). The "Motion for Order Disqualifying" Judge Kitchin was made pursuant to Rule 32.09 and § 545.660(3).

**2.** Appellant cites Rule 2, Canon 2 and Canon 3(C)(1) of the Code of Judicial Conduct. Canon 2 provides that "A Judge should avoid impropriety and the appearance of impropriety in his official activities. A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes

public confidence in the integrity and impartiality of the judiciary." Canon 3 provides that a judge should perform the duties of his office impartially and diligently. Subsection C of that canon deals with disqualification: "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a *party*, or personal knowledge of disputed evidentiary facts concerning the proceeding." (Emphasis added).

be verified and may be signed by any party or an attorney for any party....

(e) If the application is timely filed, the judge shall promptly sustain the application, and ...

(4) If the case is being heard by a circuit judge in a circuit having three or more circuit judges, the judge shall transfer the case to the presiding judge for assignment....

Rule 32.09 provides that neither the state nor any defendant shall be allowed more than one change of judge in any criminal proceeding,

(c) However, nothing contained in Rules 32.01 through 32.09 [change of venue and change of judge] inclusive, shall prohibit a judge from ordering a change of venue or change of judge when fundamental fairness requires.

Rule 32.10 provides that

If the judge is related to any defendant or has an interest in or has been counsel in the criminal proceedings or disqualifies himself for any other reason

then, in multiple judge circuits, the judge shall transfer the case to the presiding judge.

■ These rules became effective January 1, 1982.[3] Under Rule 32.07, no affidavit is required to request a change of judge. A simple request triggers the Rule, and no discretion lies on the part of the judge. The court "shall" promptly sustain the application. *Cf. State ex rel. Ford Motor Company v. Hess,* 738 S.W.2d 147 (Mo.App.1987); *State ex rel. McNary v. Jones,* 472 S.W.2d 637, 640 (Mo. banc 1971); *State ex rel. O'Brien v. Murphy,* 592 S.W.2d 194, 195 (Mo.App.1979).

In addition to these Rules, there also exist statutes relating to change of judge.

Section 545.650, R.S.Mo., 1986 provides that:

In all circuits composed of a single county having more than one judge, no change of venue shall be allowed ... for the cause that the judge sitting for the

trial of said suit is *prejudiced,* nor for the cause that the opposite party has undue influence over the judge, but if any legal objection is made ..., then such cause shall be transferred to another division of said circuit court.... Only one such application shall be made by the same party in the same case ... (Emphasis added).

Section 545.660 provides

When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases:

(1) When the judge of the court in which said case is pending is near of kin to the defendant by blood or marriage; or

(2) When the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him by blood or marriage; or

(3) When the judge is in anywise interested or *prejudiced,* or shall have been counsel in the cause; or

(4) When the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial. (Emphasis added).

Section 476.180, R.S.Mo., provides that:

No judge of any court of record, who is interested in any suit or related to either party, or who shall have been of counsel, ... shall, without the express consent of the parties thereto, sit on the trial or determination thereof.

While society and courts desire that justice be done, disqualification of judges cannot be "too easy" or "too hard." If disqualification is "too easy, both the cost and the delay of justice go out of bounds. If disqualification is too hard, cases may be decided quickly, but unfairly." Frank, *Dis-*

---

**3.** Earlier rules provided that in any criminal case the judge shall be incompetent and disqualified to hear and try said cause "when the judge is in anywise interested or prejudiced," upon the filing of an affidavit. Rule 30.12, effective March 1, 1964.

*qualification of Judges,* 56 Yale L.J. at 605, 608.[4] Under Missouri practice, a middle ground and a proper balance has been sought and, we believe, achieved, insofar as possible to do so.

It is to be noted that the Rules relating to change of judge do not use the terms "prejudice" or "bias." Those terms are found in §§ 545.650 and 545.660,[5] R.S.Mo., 1986.

However, for all practical and legal purposes, the Rules now cover all situations governed by statute and the Rules are controlling. *State v. Harris,* 670 S.W.2d 73, 77 (Mo.App.1984). Putting the Rules and the statutes on which the Rules are based in context, we believe the following principles may be distilled:

■ 1. If a judge "has an interest" (Rule 32.10) or is "in any wise interested" (§ 545.660), or "who is interested" (§ 476.-180) or "has been counsel in the criminal proceedings" (Rule 32.10) or "shall have been counsel in the cause" (§ 545.660(3)) or "shall have been counsel" (§ 476.180), then the judge is "incompetent." Section 545.-660. These causes are now embodied in Rule 32.10 and the Rule controls.

■ 2. If a judge is "related" to any defendant (Rule 32.10) or is "near of kin" to the defendant, (§ 545.660) or "related to either party" (§ 476.180), the judge is incompetent. Section 545.660; Rule 32.10. These causes are embodied in the controlling Rule 32.10

■ 3. When the offense charged is committed against the person or property of the judge, or some person "near of kin" to him by blood or marriage, the judge is incompetent and disqualified.[6] Section 545.660(2); Rule 32.10 embodies these causes and is controlling.

■ 4. If a motion for change of judge is made pursuant to Rule 32.07, resulting in the judge being peremptorily disqualified, and a successor judge is assigned to hear the case, a second or successive disqualification may be granted only if there is "cause" therefore under Rule 32.10. Rule 32.10 states the causes are relation, interest or of counsel. See *State v. Dabbs* 118 Mo.App. 663, 95 S.W. 275 (Mo.App.1906); *State v. Euell,* 583 S.W.2d 173, 174 (Mo. banc 1979). A second or successive disqualification is not authorized on the ground of "prejudice."

■ 5. If the first motion for change of judge is made on any of the grounds of "incompetency" stated in Rule 32.10 or for prejudice under § 545.660, it does not follow that a party is thereafter entitled to a peremptory disqualification of the second or successor judge under Rule 32.07. A second or successive change of judge must be upon grounds embodied in Rule 32.10 that the judge is related to any defendant, or is interested or has been of counsel in the criminal proceeding, or, at the option of the judge under Rule 32.09 that fundamental fairness requires it. Prejudice is not a ground for a second or successive disqualification. Under our Rules, statutes and decisions, the policy of our law is that only one change of judge is to be granted for prejudice.

■ 6. As to the interpretation of Rule 32.09(c), we believe it is a "catch-all" rule, supplementary and complementary to the other rules, and is a safety net to allow any successor judge to recuse himself, either on his own motion or upon motion of a party when "fundamental fairness" so requires. It is not a device to obtain a second peremptory change of judge, but is a safety net to provide an option for any successor judge to recuse himself. *Cf., State v. Euell, supra,* 583 S.W.2d at 174. The purpose of the Rule is to make clear that,

4. Compare *State ex rel. Hannah v. Armijo, Judge,* 38 N.M. 73, 28 P.2d 511, 512 (1933) with *In re Crawford's Estate,* 307 Pa. 102, 160 A. 585, 587 (1931).

5. Adopted by Act Feb. 12, 1833. See the historical reasons for the adoption in *State ex rel. McAllister v. Slate,* 278 Mo. 570, 214 S.W. 85, 90 (1919). The adoption came about because of the case of *Jim v. State,* 3 Mo. 147 (1832)— where a slave had been charged with murder and his "master" was the judge. A refusal to grant a change of "venue" was held to be error.

6. See *Jim v. State, supra.*

despite the restriction of one change of judge, a successor judge may, at his option, recuse himself when fundamental fairness requires it, regardless of the cause.

These principles are consistent with the present controlling Rules and judicial decisions. Prior to the present Rules, in order to disqualify a judge on the ground of prejudice it was necessary to allege prejudice on the part of the judge to obtain a disqualification. This was a cumbersome procedure. The Supreme Court wisely and appropriately removed from the Rules any reference to the term "prejudice" and provided simply that any party is entitled to a change of judge upon request, thus avoiding the cumbersome arena of alleging prejudice with all its peripheral ramifications. Now, any party is entitled to one change of judge without entering that cumbersome arena. Thus unlike other jurisdictions, Missouri has made the procedure for disqualification for prejudice extremely simple.

Prior to the present Rules there were two classes of causes for change of judge —one was on account of prejudice or undue influence; the other was when the judge is related to either party, or was interested or had been of counsel to either party. For the former class—prejudice or undue influence—there could be but one change of judge; for the second there may be as many as is necessary to find a judge who is not related, interested or of counsel, i.e. where the judge was incompetent. See *State v. Dabbs*, 118 Mo.App. 663, 95 S.W. 275 (Mo.1906).

These policies and principles relating to disqualification have been the law of Missouri for decades. As shown by the authorities, the policy is that only one change of judge is to be granted for prejudice. That policy of authorizing only one change of judge for "prejudice" was stated in *Eudaley v. Kansas City, Ft. S. & M.R. Co.*, 186 Mo. 399, 85 S.W. 366 (1904). There the court discussed the sound basis of this policy. The court stated that the General Assembly

seeing that the privilege granted was liable to abuse—deeming it right to give

a party who might have cause to believe that a particular judge was prejudiced against him, yet unwilling to license him to wander over the state and pick his own judge, or to present a wholesale impeachment against a number of judges, one after the other—wisely declared that but one change of venue [judge] should be allowed either party.

*Eudaley, supra*, 85 S.W. at 368; *cf.* § 508.090.

Now that the Supreme Court Rules have avoided the cumbersome procedure of alleging prejudice, the policy that a party is entitled to only one change of judge on the ground of prejudice whether stated or not, embodied in Rule 32.09, is of no moment whether the first motion alleges prejudice or requests a change of judge peremptorily—in either case, a party is entitled, as a matter of privilege, to only one change of judge. If a judge is in fact prejudiced there are other legal remedies to correct abuse of discretion. But, for the latter class—related to a party, interest or of counsel—which is now embodied in Rule 32.10, and consistent with the decisions interpreting the statutes, there may be as many changes of judges as are necessary to find a judge who is not related, interested or of counsel, *i.e.* a judge who is not "incompetent." *Dabbs, supra*, 95 S.W. at 276.

█ In the case at bar the motion for disqualification was granted and the cause was transferred to Judge Ryan who heard the case. At oral argument we were informed that if Judge Kitchin were disqualified because of prejudice, then appellant could have disqualified Judge Ryan by utilizing a motion for change of judge under Rule 32.07. The reason given was that Judge Ryan does not grant voluntary waivers of jury trial, and it was counsel's intention to try the cause to a court rather than a jury. But there is no right on the part of a defendant to waive a jury. Rule 27.01 provides that the defendant may "with the assent of the court, waive a trial by jury." There is no absolute right to be tried by the court rather than a jury. *State v. Taylor,*

391 S.W.2d 835, 836 (Mo.1965); Art. I, § 22(a), Mo. Const.

■ Whether Judge Kitchin treated the motions as ones for change of judge under Rule 32.07 or one for prejudice under § 545.660, is not critically decisive. The fact is that he did disqualify himself and the cause was assigned to another judge. Under our Rules only one change is allowed unless the judge is "incompetent." The record shows appellant was given a fair trial and that is the ultimate consideration. The appellant therefore has no just cause to complain.

We therefore hold that Judge Kitchin did not err in treating the motions for change of judge under Rule 32.07 for the reasons that (1) even if the motions were to be considered ones for prejudice filed pursuant to § 545.660, which we believe they were not, appellant was not entitled to a second change of judge for prejudice because under the policy of our law, based on sound reasons and embodied in the Rules and statutes and the judicial decisions, a party is entitled to only one change of judge for such cause, hence appellant was not entitled to a second change to disqualify Judge Ryan, and (2) Rule 32.09(c) is inapplicable because that Rule applies only to the successor judge, who has the option to disqualify himself when fundamental fairness requires it. Therefore, the second motion for change of judge before Judge Ryan was properly denied.

### IV.

■ As to appellant's second point that the court erred in sentencing appellant to a term of one year on Count VII, making a false declaration, we find that the court did err. Making a false declaration is a class B misdemeanor, § 575.060.5, and the maximum sentence is six months. Section 558.-011.1(6). The defendant was found guilty on Count VII and we affirm that conviction. *State v. Worsham*, 732 S.W.2d 209 (Mo.App.1987). The court sentenced appellant on that count to one year to run consecutively. The lawful maximum is six months. The conviction of the improper sentence does not require a remand, but the judgment may be entered by this court. Rule 30.23; *State v. Blank, supra*, 705 S.W.2d at 59. Therefore the judgment on Count VII is modified to impose a sentence of six months to run consecutively, in accordance with and under the terms of the other sentences imposed by the trial court.

### V.

Appellant's third point that the evidence was insufficient to prove an unlawful use of a weapon by carrying the knife concealed, since there was no direct evidence of concealment or intent to conceal, is without merit.

He contends that there was no showing that the knife used had a length of 8¾ inches as alleged in Count VI and that the weapon was concealed with an intent to conceal.

■ The state makes a submissible case of carrying a concealed weapon when the state's evidence and all the reasonable inferences therefrom when viewed in the light most favorable to the state, demonstrate that the defendant knowingly carries concealed upon or about his person a knife or any other deadly weapon readily capable of lethal use. Section 571.030.1(1), R.S. Mo., 1986; *State v. Mattox*, 689 S.W.2d 93, 95 (Mo.App.1985).

■ The evidence and all reasonable inferences therefrom here, indicate that the appellant carried the knife with intent to conceal. Mrs. Truemper testified she saw the knife following the struggle between Officer Atkins and the defendant; Officer Atkins testified that the knife fell, and that appellant was wearing a knife-holder on his belt at the time of the incident; Robert Allen, one of the witnesses, saw the knife on the ground. The knife-holder was admitted into evidence. From all this evidence, the jury could reasonably infer that appellant was carrying a knife concealed "on or about his person" at the time he accosted Mrs. Truemper and that he did so with intent to conceal it. When the evidence shows concealment an inference of intent arises. *State v. Jackson*, 645 S.W.2d 725, 727 (Mo.App.1982); *State v. Mattox*,

*supra,* 689 S.W.2d at 96.  There is no error in this regard.

## VI.

We have read the entire record, the briefs, and the authorities relied upon by appellant.  We have examined the decisions relied upon by appellant and find them not controlling on the issues raised.  Hence, we find no prejudicial error.

The judgment of conviction is affirmed.

SATZ, C.J., and CARL R. GAERTNER, J., concur.