**STATE of Missouri, Respondent,**

v.

**Andrew CELLA, et al., Appellants.**

**No. 72054.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 7, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 9, 1998.

Application for Transfer Denied
Oct. 20, 1998.

Scott Everett Walter, St. Charles, for appellant Andrew Cella.

Daniel J. Dodson, Dodson & Gummels, Columbia, for appellants Roman Haslag, Jr., James Tilden Ransdell, Clifford Keith Hobbs, Roger Allen Peek and Raymond Leslie Rees.

David C. Hemingway, Public Defender, St. Louis, for appellant Dorsett Harry Gant.

Donald Lee Shaffer, Mendon, IL, pro se.

Donald Ray Schaefer, Rhineland, pro se.

Dennis Patrick Logan, Rhineland, pro se.

Donald Lee Young, Rushville, IL, pro se.

Floyd Lee Heubner, Quincy, IL, pro se.

Michael Andrew Peek, St. Peters, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Dorsett Harry Gant (Gant), Andrew James Cella (Cella), Roger Allen Peek (R. Peek), James Tilden Ransdell (Ransdell), Roman Nelson Junior Haslag (Haslag), Donald Ray Schaefer (Schaefer), Dennis Patrick Logan (Logan), Donald Lee Shaffer (Shaffer), Donald Lee Young (Young), Floyd Lee Heubner (Heubner), Michael Andrew Peek (M.Peek), Raymond Leslie Rees (Rees), and Clifford Keith Hobbs (Hobbs)(collectively defendants) appeal the judgments entered upon jury verdicts finding them each guilty of Tampering with a Judicial Officer pursuant to Section 565.084 RSMo 1994 (all further references shall be to RSMo 1994 unless indicated otherwise) for which all defendants except Logan and Hobbs were sentenced to two years

imprisonment and a fine of $5,000. Logan and Hobbs were sentenced to seven years imprisonment and a $5,000 fine.

Defendant Gant contends that the trial judge erred in: (1) ordering him to proceed pro se; (2) failing to recuse himself; and (3) convicting the defendants after overruling objections to the state referring to defendants as "the freemen." Defendant Cella contends that the trial court erred in: (1) overruling his motion for recusal of judge because his requests for judicial recusal were proper; (2) allowing troopers Mark Inman and Corporal William Cooper of the Missouri State Highway Patrol to testify regarding the Amanda Brook Lenk–Judge Flynn case; (3) denying his motions to dismiss the information against him for lack of in personam and subject matter jurisdiction; (4) allowing Don Lock, the State's handwriting expert, to testify as to whether or not Cella's signature on the common law court's grand jury order was his; and (5) failing to admonish the jury that the repeated egregious and contemptuous conduct of defendants Hobbs and Logan were not to be inferred to Cella. Defendants Hobbs, Rees, Ransdell, Haslag, and R. Peek contend that the trial court erred in: (1) allowing the prosecution and conviction of defendants for conduct protected by right of free expression; (2) refusing to allow defendants a continuance from the original trial date to obtain counsel; (3) refusing defendants' motion for recusal of judge in that Rule 32.07 requires automatic recusal upon a timely motion; and (4) sentencing defendants under Section 565.084. Defendants Schaefer, Logan, Shaffer, Young, Heubner; and M. Peek essentially contend that the trial court erred in: (1) issuing arrest warrants upon an unconstitutional complaint; (2) permitting the alleged "special prosecuting attorney" to commit "prosecutorial legislation" in his efforts to construct an actionable offense out of an "obviously unconstitutional statute"; (3) "not personally inspecting and verifying the authenticity or validity of documents submitted into evidence"; and (4) "acquiescing and allowing the use of the judiciary as a means to perpetrate an intrinsic fraud in the initiation of the cause."

In their appeals, Gant, Cella, R.Peek, Ransdell, Haslag, Rees and Hobbs were represented by attorneys. Schaefer, Logan, Shaffer, Young, Huebner, and M.Peek filed their appeals pro se. We further note that R. Peek, Ransdell, and Haslag have together filed a pro se brief addressing points similar to those addressed by their attorneys. We reverse and remand.

The defendants failed to file motions for new trial, therefore any review is for plain error. Plain error relief is appropriate only when the alleged error so substantially affects the rights of the defendant that a manifest injustice or miscarriage of justice results. *State v. Isa*, 850 S.W.2d 876, 884 (Mo.banc 1993).

We note that the record on appeal is voluminous containing a transcript of more than 3100 pages and at least seven legal files. The record viewed in the light most favorable to the verdict reveals that on February 3, 1996, Highway Patrol Officer David Flannigan (Flannigan) issued two traffic tickets to Amanda Brook Lenk (A.Lenk), which were assigned to the Honorable Patrick S. Flynn, Associate Circuit Judge of Lincoln County. On February 28, 1996, A. Lenk's maternal grandfather George Castle and Charles Detmer informed Judge Flynn in his chambers that it would be in his best interest to dismiss the case against A. Lenk and if he did not do so ". . . they would have to proceed with their proceedings in their court." Sometime on February 28, Judge Flynn received a document entitled "Caveat and Demand to All Public Officials" from Castle and Detmer informing Judge Flynn that he and all public officials would be violating her constitutional rights under 42 U.S.C. Sections 1983–1986 and 18 U.S.C. 41, 242, 2381, if they proceeded in the case of State of Missouri v. Amanda Brook Lenk. Judge Flynn did not dismiss the case.

On March 12, 1996, A. Lenk appeared with her father, Melvin Lenk (M.Lenk), Castle, Detmer, and Hobbs before Judge Flynn. A. Lenk stated that she represented herself and moved that the charges against her be dismissed because she had chosen not to live under the laws of the United States through a Declaration to Quiet Title. Hobbs in-

formed Judge Flynn that he was there as A. Lenk's "counsel" but was not allowed to represent her because he was not a licensed attorney. Hobbs informed Judge Flynn that he had no jurisdiction, the case should be dismissed and Judge Flynn would be brought before "their court" if he did not dismiss the case.

On or about March 25, Judge Flynn received documents entitled "Order to Appear," ordering him to appear before "Our One Supreme Court ... at the Knights of Columbus Hall in St. Clement, Missouri at 7:00 p.m., March 13th.... If you do not appear at the time, date and place so ordered[,] a default will be entered on your behalf and judgment entered against you in the sum ... of ten million eight hundred and four thousand dollars of United States of America currency." Judge Flynn received two of these "orders," one on behalf of A. Lenk and the other on behalf of Hobbs, each of which had affidavits attached from M. Lenk and Hobbs and a list of "jurors" who entered the order.

Judge Flynn did not appear before "Our One Supreme Court." On March 30, 1996, defendants met at the Knights of Columbus Hall and issued an "order" signed by twenty-four grand jurors including Gant, Cella, R.Peek, Ransdell, Haslag, Schaefer, Shaffer, Young, Heubner, M.Peek, and Rees, which provided, in pertinent part:

> ORDER
>
> Finding of Facts, Patrick S. Flynn failed to appear at the time, date, and place that he was ordered to appear, therefore a default and judgment is hereby ordered to be entered against Patrick S. Flynn. An Attested and Affirmed Affidavit was filed by Clifford Keith Hobbs stating that Patrick S. Flynn had violated his Const[i]tutional Oath of Office by violating Clifford Keith Hobbs' Constitutional Rights. Since Patrick S. Flynn failed to appear, or to make any attempt to rebut the Affidavit, the Affidavit shall stand as the truth. Our One Supreme Court hereby orders that an Affidavit of Information, Criminal Complaint For Public Notice Filing and an Affidavit in Support of Claim of Lien, Affidavit of Obligation, be filed with the Re-

corder's Office of Lincoln County[,] Missouri. It is also Ordered that this jury finds there is enough evidence against Patrick S. Flynn for violation of his Constitutional Oath of Office and that Criminal charges may be filed against him.

The above finding of facts by the Grand Jury is not reviewable by any other court of the United States as set forth under the 7th Amendment, nor subject to trespass upon the case, by the Judicial Power of the United States, per 11th Amendment, our national Constitution.

\* \* \*

On April 1, 1996, M. Lenk and Castle filed liens in the Lincoln County Recorder's Office against the property of Judge Flynn, Lincoln County prosecutor G. John Richards (Richards) and trooper Flannigan. The liens, which Recorder Melba Houston recorded and filed, consisted of two documents: an "Affidavit of Information, Criminal Complaint" and an "Affidavit in support of Claim of Lien" and provided Judge Flynn with the option of paying the $10.8 million or dismissing the case against A. Lenk. Seeking to finance certain property, Judge Flynn discovered the liens. Subsequently, the Attorney General's Office filed a proceeding to expunge the liens. Circuit Court Judge Fred Rush presided over a hearing to expunge the liens and ordered the liens expunged.

On April 5, 1996, Judge Rush granted Richards' request to appoint a special prosecutor to pursue charges involving activities of "Our One Supreme Court." Attorney General Jay Nixon was appointed as special prosecutor and began an investigation using State of Missouri Highway Patrol Investigators (Highway Patrol). The investigators from the Highway Patrol interviewed the individuals listed on the grand juror sheet of the March 30, 1996 order. Twelve of the thirteen defendants who signed the order of "Our One Supreme Court" acknowledged that the signatures on the order were theirs, and the thirteenth individual's signature was subsequently established through a handwriting expert.

On April 9, 1996, A. Lenk appeared before Judge Flynn and requested that he disquali-

fy himself. Hobbs, attempting to act as her representative, also requested that Judge Flynn disqualify himself. Both requests were denied. A. Lenk also requested a jury trial, which was granted related to the charge of failure to maintain a single lane and scheduled for April 29th. Judge Flynn found A. Lenk guilty of the speeding and seat belt infractions and imposed a $26.00 fine and $43.00 in court costs.

At the April 9th hearing, Highway Patrol Investigator Robert Stiefferman (Stiefferman), working undercover as "William Spencer," approached Logan and Hobbs about two traffic tickets of his own. Hobbs told Stiefferman that the motion to disqualify Judge Flynn and the lien filed against him was a procedure of the common law court and introduced Stiefferman to Logan.

On April 29, 1996, A. Lenk had a jury trial where she was found guilty of failure to maintain a single lane and ordered to pay a $25.00 fine plus $43.00 in court costs.

On May 18–19, Stiefferman attended a common law seminar in Hannibal at the invitation of Logan and Hobbs. About thirty-five people attended, including defendants Logan, Hobbs, Heubner, Schaefer, Shaffer, M. Peek, and R. Peek. Logan instructed the attendees on how to set up a common law "court." Stiefferman obtained documents including a quiet title, which declared an individual free from the rule of the United States government; a non-statutory abatement, which gave notice to a court that it did not have jurisdiction; a writ of prohibition; and a document entitled "precipice." Stiefferman also observed two computers, one belonging to Hobbs and the other belonging to Logan, that were used to prepare documents.

On June 17, 1996, the Highway Patrol executed a search warrant at Logan's home and seized a Packard Bell computer and some 300 computer disks, discovering documentation in regard to A. Lenk on a computer disk. Further, arrest warrants for eighteen individuals were issued.

On August 7, 1996, a preliminary hearing was conducted before Judge Calhoun, Associate Circuit Judge, Lincoln County Circuit Court. On August 23, 1996, the state filed informations against defendants, which provided, in pertinent part:

The Special Prosecuting Attorney for Lincoln County, State of Missouri charges that [the defendant] in violation of Section 565.084 of the Revised Statutes of Missouri committed the class C felony of tampering with a judicial officer, punishable upon conviction under Section 558.011.1(3) and 560.011 in that on or about April 1, 1996, in the County of Lincoln, State of Missouri, [the defendant], with the purpose to influence Judge Patrick S. Flynn, a judicial officer, in the criminal trial of the State vs. Amanda Brook Lenk, an official proceeding, tampered with a judicial officer by engaging in conduct reasonably calculated to harass Patrick S. Flynn, namely filing a lien with the Lincoln County Recorder of Deeds on the property of Patrick S. Flynn.

That day, defendants were arraigned before Judge Rush, and the state filed a motion to join all eighteen cases for a single trial. At some point prior to trial, three defendants had their cases severed and were not part of this action.

On September 13, 1996, several defendants filed motions that were similar in form and entitled "Affirmed Original First Article In Amendment Petition, In Affidavit Form, for the Recusal of Judge Fred Rush, Pursuant Missouri Supreme Court Rule 12.06, 28 U.S.C. 144, 28 U.S.C. 455(a), and 455(b)(1)." On September 23, 1996, defendants again filed motions requesting Judge Rush to recuse himself. On September 27, 1996, the court took under advisement defendants' pretrial motions:

Upon notice by the Defendants, who each individually filed various pre-trial motions, the Defendants motions were called and each individual Defendant was heard on said motion. All defendants appeared personally. The State, appearing through counsel, asks that the motions be overruled.

The Defendants motion, after hearing, are taken under advisement for decision by this court.

The transcript of that hearing on September 27, 1996, is not contained in the record on

appeal. On November 7, 1996, the trial court issued its order:

> The Court having heard argument on all of the Defendant's motions that were pending on September 27, 1996 it is now ordered that all of the motions be denied. Counsel and pro se Defendants to be notified of this order. Defendants Motion for Jury Trial is ordered granted to the extent that this cause has been set for jury trial in this Court.

Trial was held from December 2 to December 12. The jury found all fifteen defendants guilty of tampering with a judicial officer. Defendants Logan and Hobbs were sentenced to seven years imprisonment, and the other defendants were each sentenced to two years imprisonment. None of the defendants filed a motion for new trial. Two defendants did not file an appeal.

■ On appeal, defendants Cella and Gant have filed a motion for leave to file a supplemental brief, which was ordered taken with the case. In his motion, Gant's counsel states that he prepared Gant's legal file based on files the trial court identified as consisting of Gant's individual file and a "consolidated" case file into which documents from all defendants were filed after the case was consolidated for joint trial. Subsequently, in defendants' individual case files located in Lincoln County, Gant's counsel discovered two motions to disqualify Judge Rush that were signed by all defendants and bear the clerk's stamp dated August 23, 1996. Gant contends that the issue of Judge Rush's compliance with Rule 32.07 is not new and has been briefed by other defendants in this appeal. Cella's motion for leave to file a supplemental brief presents a similar argument as Gant's motion, contending that Cella also filed a motion asking the judge to recuse himself on August 22, 1996, which was discovered soon after Gant filed his motion to file the supplemental brief. The State responds that defendants never brought these documents to the trial court's attention, and no one could be expected to know that these documents were a request for a change of judge.

Gant and Cella's supplemental legal file contains three documents, which are nearly identical in form and provide, in pertinent part:

\* \* \*

RECTUM ROGARE for RECUSAL for CAUSE

HONORABLE JUDGE FRED RUSH

THE CIRCUIT COURT OF LINCOLN COUNTY

STATE OF MISSOURI

Before the Court, for Case Number CR 196–429F, is the Petition of Dismissal and/or Recusal of the HONORABLE JUDGE FRED RUSH.

Because of the many Title 42 Complaints filed by the undersigned, ( Cases Filed in UNITED STATES DISTRICT COURT, EASTERN DISTRICT COURT OF MISSOURI, SAINT LOUIS DIVISION,) it is believed that the HONORABLE JUDGE FRED RUSH should be held incompetent to preside, because the previous filed Law Suits could cause Bias and/or Prejudice upon the part of the Judge.

Dated this 22nd. Day of August, 1996.

\* \* \*

The documents are signed by all defendants and bear the stamp of Melba Houston, Clerk of the Circuit Court Lincoln County, Missouri, dated August 23, 1996.

Gant's legal file contains a certificate of service indicating that Gant mailed four documents to the State via first-class mail on August 27, 1996, two of which were previously filed with the trial court on August 23, 1996:(1) "JUDICIAL NOTICES, DEMANDS, AND 'SPECIAL APPEARANCE' OF DEFENDANT—TO JUDGE RUSH"; and (2) "RECTUM ROGARE for RECUSAL for CAUSE—TO Judge Rush."

During the arraignment of defendant Schaefer on August 23, 1996, the following exchange took place between the court, defendant Schaefer and the Assistant Prosecutor:

> Schaefer: I have some papers here that I wish the bailiff to present to you.

The Court: If you'll just give them to the Clerk's office they'll hit the file and we'll look at them in due time.

Schaefer: I think these have bearing and need to be addressed at this time because also we have other matters in this issue that have been filed that have not been addressed and we feel that these issues need to be addressed before this matter can be proceeded any further at this time.

The Court: If you want to hand me those matters you may, sir.

Schaefer: Well, I enter the bar under duress, sir.

The Court: Well, it appears you're coming on your own, but that's fine. Thank you.

Have you seen these.

Assistant Prosecutor: I have not; your Honor.

The Court: If you want to look at them. Thank you.

Assistant Prosecutor: Thank you.

The Court: You're the—— Well, excuse me just a minute. Court at this time is not going to recuse itself.

* * *

The Court: Do you have any questions, sir?

Schaefer: Uh——

The Court: About anything that's happened here today?

Schaefer: Not other than the previous questions about certain things that need to be

addressed before this procedure can continue.

The Court: Very well. You can take those up. If you file your motions and notice them correctly they can be taken up on the 27th of September, sir.

Schaefer: Well, we have filed several of them. All right, sir.

The Court: I understand, but you need to give notice to the opposing party and I can't tell you beyond that.

* * *

During the arraignment of defendant R. Peek on August 23, 1996, the following exchange took place:

Peek: Also on the record I need to hand you a document or have your bailiff come here and hand it to you.

The Court: You can hand it to me. That's fine.

Peek: May I have your bailiff take it to you?

The Court: No. If you want you can file it in the Clerk's office or hand it to me, either one.

Thank you.

Peek: I'm gonna give one to your attorney.

The Court: Well, he's not my attorney. He's the State's attorney.

Peek: The State's attorney.

The Court: Thank you.

Peek: Also, sir, I need to enter again and give you an additional copy.

The Court: Of the same document?

Peek: No, sir.

The Court: Oh, okay. Thank you.

At this time I'm going to deny the motion for me to recuse myself.

* * *

Our examination of defendants' briefs indicates that the issue of alleged error by Judge Rush in not recusing himself pursuant to Rule 32.07 has been previously addressed by defendants and therefore the issue raised by Cella and Gant's supplemental brief are pertinent to this appeal. A review of the record reveals that documents entitled "Rectum Rogare for Recusal for Cause" were presented to the trial court and the assistant attorney general at defendants' arraignment, Judge Rush acknowledged that such documents were requesting him to "recuse himself" and he denied the motions. Thus, Cella and Gant's motions for leave to file supplemental briefs are granted.

■ In his supplemental brief, Gant contends that Judge Rush erred when he failed to disqualify himself based on the timely motions to recuse signed by Gant and all the

other defendants which were filed the day the initial plea was entered, August 23, 1996, because the written motion was timely filed under Rule 32.07 and therefore, the motions left Judge Rush with no jurisdiction to take any further action in the case except to send it to another judge.

■ In criminal and civil cases, the right to disqualify a judge is "one of the keystones of our legal administrative edifice." *State ex rel. Mountjoy v. Bonacker*, 831 S.W.2d 241, 244 (Mo.App.1992). No system of justice can function at its best or maintain broad public confidence if a litigant can be compelled to submit his case in a court where he sincerely believes the judge is incompetent or prejudiced. *Id.* Thus, statutes and rules are liberally construed in favor of the right to disqualify. *Id.* The right to disqualify a judge has been described as "virtually unfettered." *Id.* Therefore, if a request for trial judge disqualification is in proper order, the trial judge's duty is to sustain it. *Id.*

Rule 32.07 provides, in pertinent part:

(a) Except as provided in Rule 32.06, a change of judge shall be ordered in any criminal proceeding upon the timely filing of a written application therefor by any party. The applicant need not allege or prove any reason for such change. The application need not be verified and may be signed by any party or an attorney for any party.

(b) In felony and misdemeanor cases the application must be filed not later than ten days after the initial plea is entered. If the designation of the trial judge occurs more than ten days after the initial plea is entered, the application shall be filed within ten days of the designation of the trial judge or prior to commencement of any proceeding on the record, whichever is earlier.

(c) A copy of the application and a notice of the time when it will be presented to the court shall be served on all parties.

(d) Upon the presentation of a timely application for change of judge, the judge promptly shall sustain the application

\* \* \*

Committee Note ——1982

\* \* \*

The following application would be sufficient: "(Caption) . . . . . . . . . . . . . . . . . . . . requests a change of judge.
(Signature and address of attorney or party.)"

■ The first application for a change of judge, no matter how characterized, is treated as an application under Rule 32.07 and exhausts the party's right to one change of judge. Rule 32.07; *State v. Hornbuckle*, 746 S.W.2d 580, 587 (Mo.App.1988); *See also* Judge Robert H. Dierker, Jr., *Missouri Criminal Practice Handbook* 173 (West Publishing 1998).

In *Hornbuckle*, the defendant was indicted for robbery first degree, two counts of attempted kidnapping, armed criminal action, attempted stealing of a motor vehicle, carrying a concealed weapon and making a false declaration. *Hornbuckle*, 746 S.W.2d at 581–582. After the case was assigned to trial judge, the public defender assigned to represent the defendant filed two motions asking the trial judge to disqualify himself. The first motion was made pursuant to Rule 32.09 and Section 545.660(3), RSMo 1978, and alleged that the trial judge was so prejudiced against defense counsel that defendant could not receive a fair trial. The second motion entitled "Verified Motion For Recusal and Request for Evidentiary Hearing" was filed pursuant to Section 545.660(3) and moved the trial judge to recuse himself because he was prejudiced against members of the Public Defender's Office.

On receiving the motion, the trial judge treated it as an application for change of judge under Supreme Court Rule 32.07, sustained the motion, and transferred the cause to another judge. *Hornbuckle*, 746 S.W.2d at 582–583. Defense counsel then filed a motion for change of judge pursuant to Rule 32.07 and Section 545.650, which was denied by the trial judge who noted that defendant had already filed and received the one change of judge he was entitled to under Rule 32.07. *Id.* at 583. Defendant was sub-

sequently tried and convicted. On appeal, he contended the trial judge abused his discretion and committed reversible error by refusing to rule on his motion made pursuant to Rule 32.07 and Section 545.650, and electing to treat his "Verified Motion" as one for change of judge under Rule 32.07, thereby avoiding ruling on the motion, so that his actions foreclosed him from exercising his peremptory right to change of judge before the second trial judge. *Id.*

In ruling against Hornbuckle, we noted that the rules relating to change of judge did not use the terms "prejudice" or "bias." *Id.* at 585. Putting the rules and the statutes on which the rules are based in context, we treated the first motion to disqualify a judge for cause under Rule 32.10 or Section 545.660 as a motion for recusal under Rule 32.07 and stated:

> 5. If the first motion for change of judge is made on any of the grounds of "incompetency" stated in Rule 32.10 or for prejudice under Sec. 545.660, it does not follow that a party is thereafter entitled to a peremptory disqualification of the second or successor judge under Rule 32.07. A second or successive change of judge must be upon grounds embodied in Rule 32.10 that the judge is related to any defendant, or is interested or has been of counsel in the criminal proceeding, or, at the option of the judge under Rule 32.09 that fundamental fairness requires it. Prejudice is not a ground for a second or successive disqualification. Under our Rules, statutes and decisions, the policy of our law is that only one change of judge is to be granted for prejudice.

*Hornbuckle,* 746 S.W.2d at 585[6] (Mo.App. 1988).

We further noted:

> Prior to the present Rules, in order to disqualify a judge on the ground of prejudice it was necessary to allege prejudice on the part of the judge to obtain a disqualification. This was a cumbersome procedure. The Supreme Court wisely and appropriately removed from the Rules any reference to the term "prejudice" and provided simply that any party is entitled to a change of judge upon request, thus avoid-

ing the cumbersome arena of alleging prejudice with all its peripheral ramifications. Now, any party is entitled to one change of judge without entering that cumbersome arena. Thus unlike other jurisdictions, Missouri has made the procedure for disqualification for prejudice extremely simple.

> Prior to the present Rules there were two classes of causes for change of judge— one was on account of prejudice or undue influence; the other was when the judge is related to either party, or was interested or had been of counsel to either party. For the former class—prejudice or undue influence—there could be but one change of judge; for the second there may be as many as is necessary to find a judge who is not related, interested or of counsel, i.e. where the judge was incompetent. See *State v. Dabbs,* 118 Mo.App. 663, 95 S.W. 275 (Mo.App.1906).

\* \* \*

> Now that the Supreme Court Rules have avoided the cumbersome procedure of alleging prejudice, the policy that a party is entitled to only one change of judge on the ground of prejudice whether stated or not, embodied in Rule 32.09, is of no moment whether the first motion alleges prejudice or requests a change of judge peremptorily—in either case, a party is entitled, as a matter of privilege, to only one change of judge. If a judge is in fact prejudiced there are other legal remedies to correct abuse of discretion. But, for the latter class—related to a party, interest or of counsel—which is now embodied in Rule 32.10, and consistent with the decisions interpreting the statutes, there may be as many changes of judges as are necessary to find a judge who is not related, interested or of counsel, i.e. a judge who is not "incompetent." *Dabbs, supra,* 95 S.W. at 276.

*Hornbuckle,* 746 S.W.2d at 586.

In *Hornbuckle,* it was of no importance whether these documents alleged "cause" or requested a change of judge peremptorily— in either case, defendants were entitled, as a

matter of privilege, to one change of judge. *Id.* at 586.

Further, the criminal procedure change of judge requirements contained in Rule 32.07 are parallel and contain nearly identical language to Rule 51.05. *State ex rel. Director of Revenue, State of Mo. v. Scott,* 919 S.W.2d 246, 247–248 n. 1 (Mo.banc 1996).

In *Hough v. Hough,* 819 S.W.2d 751 (Mo. App.1991), the question presented to the court was whether or not, in a civil case, the motion for change of judge alleging bias and prejudice against the trial judge should have been considered under Section 508.090 RSMo 1986, which allows for a change of judge in the event of prejudice, or whether it should have been considered as a motion under Rule 51.05. *Id.* at 752. The *Hough* court stated:

> During the time within which Rule 51.05 applies, a party may obtain a change of judge without any cause, whereas if Sec. 508.090 is followed a party would be required to allege and prove prejudice. In that event Rule 51.05 supersedes Sec. 508.090 in the time frame within which Rule 51.05 allows a change of judge without any cause because the two are in conflict. Thus, during the time period that Rule 51.05 applies, a motion for a change of judge should be treated as a motion filed under the provision of the rule and any allegation of cause should be treated as surplusage.

*Hough,* 819 S.W.2d at 752.

We find the analysis in *Hornbuckle* and *Hough* persuasive. At their arraignment, defendants filed documents with the court requesting a change of judge and presented those documents to the judge and the special prosecutor. The judge denied their motions even though they were sufficient to inform the judge and the prosecutor that defendants were requesting a change of judge. The judge should have treated the allegations of bias and prejudice as surplusage and treated the motions as if they were filed under Rule 32.07. If the motions were treated as being a request for a change of judge under Rule 32.07, the judge had no choice but to grant the motions.

The state argues that defendants are not entitled to a new trial based on these motions because defendants failed to properly serve the state, and defendants never gave notice of a hearing date as required by the rule.

■ The notice of hearing requirement is not an integral part of an application for a change of judge, and the Rule 32.07(c) time constraints do not apply to the notice provision. *State ex rel. Director of Revenue v. Scott,* 919 S.W.2d 246, 248 (Mo. banc 1996); see also *State ex rel. Director of Revenue v. Scott,* 920 S.W.2d 170, 171 (Mo.App.1996). The purpose of the notice requirement is to provide the opposing party an opportunity to be heard and to contest the form, timeliness and sufficiency of the motion. *In re Buford,* 577 S.W.2d 809, 827 (Mo.banc 1979). The failure to include a notice of hearing in an application is not fatal to the right to disqualify a judge when the application is otherwise timely filed and timely served upon the opposing party, the opposing party had an opportunity to contest the application, and no other cause for denying the application was presented or apparent to the trial court. *Scott,* 919 S.W.2d at 248. A party for whose benefit the notice provision exists may waive the notice of hearing requirement. *Mountjoy,* 831 S.W.2d at 247.

■ Here, the assistant prosecuting attorney was present and viewed the motions when Judge Rush denied them at defendants' arraignment. Defendant Gant mailed a copy of the motion to the state on August 27, 1996. The record does not reveal that the state made a timely objection to the insufficient notice of the August 23rd motion, therefore, it has waived its right to contest the sufficiency of the form of notice and whether it had a reasonable opportunity to contest the form, timeliness or sufficiency of the application need not be addressed.

We are required to review this case for plain error because defendants failed to file a motion for new trial. The trial judge took great care in the trial of this matter and performed admirably under the circumstances. However, we are constrained to find plain error rising to the level of manifest injustice because the trial judge refused to recuse himself pursuant to a timely motion.

Therefore, he was without jurisdiction to proceed further other than to transfer the case. *Mountjoy,* 831 S.W.2d at 243. In light of our disposition of this point on appeal, we will not address defendants' remaining points on appeal. The judgments are reversed and remanded.

JUDGMENTS REVERSED AND REMANDED.

ROBERT G. DOWD, Jr., P.J. and HOFF, J., concur.

CRAHAN, Judge, dissenting from denial of transfer.

I respectfully dissent from the denial of transfer. I concur fully with Judge Simon's scholarly and thorough analysis of whether Judge Rush erred in denying the defendant's motion to recuse himself. His failure to do so was clearly error. It could even be characterized as plainly error, or even plumb error. I cannot agree, however, that his failure to do so was "plain error" within the meaning of Rule 30.20 because I can find no indication that Judge Rush's failure to recuse himself resulted in a "manifest injustice or miscarriage of justice."

The reason review in this case is limited to the plain error standard is because none of the defendants filed a motion for new trial. The court's opinion predicates plain error on the holding in *State ex rel. Mountjoy v. Bonacker,* 831 S.W.2d 241 (Mo. App. S.D. 1992), that upon a timely application, a trial judge lacks jurisdiction to proceed further other than to transfer the case. Similar statements can be found in cases of this court, probably even my own if I look hard enough. *Mountjoy,* of course was a writ case, not plain error case, and thus did not consider whether a failure to grant the motion would result in a manifest injustice or miscarriage of justice.

We do have an unfortunate tendency in writ cases to use the term "jurisdiction" a bit loosely, probably to bolster and justify using the writ. It would probably be more accurate to say the judge has no *discretion* to do anything except grant the motion and recuse. Or, as the court in *Mountjoy,* put it, upon receipt of a motion in proper order, the trial judge has a duty to sustain it. 831 S.W.2d at 244.

Our supreme court has held that a judge's refusal to recuse himself in a criminal case does not violate due process unless the judge cannot, because of the nature or facts of the case, give the accused an impartial trial. *Osborne v. Purdome,* 244 S.W.2d 1005, 1013 (Mo. banc 1951), *holding reaffirmed, Osborne v. Purdome,* 250 S.W.2d 159, 161 (Mo. banc 1952). If it doesn't violate due process, how can it result in a manifest injustice or miscarriage of justice? The panel found no indication that the trial judge was, in fact, biased against the defendant. Indeed, he appears to have been scrupulously fair in an extremely contentious case. He sentenced the defendants in accordance with the jury's recommendation. In short, there is no reason to believe the result, or even any ruling, would have been different before a different judge. I would transfer this case so the Missouri Supreme Court can determine whether, absent any indication of actual bias, a trial court's refusal to grant a motion to recuse amounts to a "manifest injustice or miscarriage of justice."