**STATE of Missouri, Respondent,**

v.

**John Lamice BRYANT, Appellant.**

**No. 47915.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 14, 1986.

Motion for Rehearing and/or Transfer
Denied Feb. 11, 1986.

Application to Transfer Denied
March 25, 1986.

Debra Buie Arnold, St. Louis, for appellant.

William L. Webster, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Appeal from a jury conviction of capital murder, for which defendant was sentenced to life imprisonment without eligibility for probation or parole for fifty years. The state did not seek the death penalty. We affirm.

As the sufficiency of the evidence supporting the conviction is not challenged, the facts may be briefly stated. Decedent, a ten-year-old girl, arrived in St. Louis on Monday, May 31, 1982, to visit her ex-step-grandparents. After spending a few days with them she went to visit her maternal grandparents, who also lived in St. Louis, on Saturday June 5. She was not seen by either set of grandparents again. Later that day, the police were notified she was missing.

On Friday, June 11, 1982, a body was discovered in a vacant house by an alcoholic vagrant who was seeking shelter. This body was so badly decomposed it could only be identified as decedent by dental records. Fingerprints could not be taken. It was discovered in a state of partial undress with a strip of cloth in the back of her mouth in a position making it impossible for decedent to breath. One leg of a pair of woman's slacks was tied around her neck. Most of the rest of the body was unclothed. The skull had been fractured in such a way the fracture could only have been caused by being hit by a flat, blunt instrument such as a broad board or perhaps a human hand or foot. Death could have resulted from either the head injury or strangulation, but the medical examiner testified the head injury was inflicted first, followed by strangulation, which was apparently the actual cause of death.

Defendant, nicknamed "Happy Jack" or "X-Hell," lived around the neighborhood, occupying a room rent-free in Rebecca Rhoden's flat. He claimed a proficiency in "Kung Fu," and wanted to open a martial arts school. A neighbor saw defendant with decedent around noon on the day she disappeared. In various interviews for news organizations covering the disappearance of the girl, and in conversations with neighbors, defendant stated he was probably the last person to see her alive. He claimed he sent the victim to the store and she did not return.

Defendant seemed depressed about the girl all during the week of the search for her. He left Rhoden's flat, and stayed for three days with a friend with whom he worked. Then, he was checked into a motel on June 11, the day the body was discovered. Later that evening he was arrested at the motel. Searches of his motel room and his room at Rhoden's flat disclosed various clothes and items including comic books, and pornographic and "Kung Fu" magazines. Also seized were various sketches and pictures drawn by defendant and signed "X-Hell," which depicted demons, demi-gods, and "Kung Fu Gods." Following arrest and questioning, defendant gave audio- and video-taped confessions, wherein he stated demons, acting through him, had killed the little girl. At trial, defendant repudiated the confessions. He stated he was drunk when he confessed, and did not remember confessing and denying the existence of "demons", claiming they were only hallucinations.

Defendant proffers error in the trial court's ruling allowing the state to correct an erroneous endorsement of a witness. On the indictment, the state endorsed as a witness, "P[olice] O[fficer] Chris *Peppers,*

D[epartment] S[erial] N[umber] 0855." At trial, an Officer *Pappas*, with the same DSN, testified. During a recess during this officer's testimony, the state disclosed, for apparently the first time, a police report by Officer *Pappas*, which contained a statement decedent was seen, alone, about one and one-half hours after she was seen with defendant. Defendant's request for a new trial or in the alternative to strike the testimony of Officer Pappas was denied. The witness who made the statement was subpoenaed to appear, but was never found. According to statements made on the record by the prosecutor, this witness was a juvenile, a ward of the court in the legal custody of the Division of Family Services, and a chronic runaway who had been missing for over a month.

Defendant's request for discovery covered all categories enumerated in Rule 25.03. Disclosure of the report by Officer Pappas was clearly required. *State v. Kerfoot*, 675 S.W.2d 658, 660 (Mo.App.1984). The state's failure to properly respond to the request for discovery empowered the court, within its discretion, to impose sanctions. Rule 25.16. Such discretion is abused only where there is a fundamental unfairness to the defendant, which occurs if timely discovery of the evidence would have affected the outcome of the trial. *State v. Merrick*, 677 S.W.2d 339, 342–43[5] (Mo.App.1984). "[D]efendant must show that the failure to produce the evidence earlier resulted in fundamental unfairness or prejudice to his substantial rights." *State v. Mansfield*, 668 S.W.2d 271, 273 [7] (Mo.App.1984). No such showing has been made here.

■ There was no unfairness in refusing to strike Officer Pappas's testimony, which largely covered the geography of the area, and the mechanics of the initial search, and did not even mention defendant. *See Kerfoot*, 675 S.W.2d at 660. Likewise, we see no abuse of discretion in refusing to grant a mistrial or continuance based upon failure to disclose the report identifying the witness. The court ordered the prosecution to seek out the witness, who was not found. Nothing in the record

indicates further time would increase the probability of finding the witness. *See State v. Churchir*, 658 S.W.2d 35, 37[2] (Mo.App.1983). Also, it is not apparent this absent witness's testimony the victim was seen alive and alone one and one-half hours after she was seen with defendant would have affected the outcome of the trial, in view of defendant's confessions and the other evidence connecting defendant with this crime.

■ Defendant also challenges the late endorsement of Officer *Pappas*. The trial court evidently believed, in light of the serial numbers, the endorsement of *Peppers* was a typographical error, which the state was allowed to correct. Assuming however, the endorsement of Pappas was a wholly new endorsement, it was well within the trial court's discretion, even at trial, to allow the late endorsement. Rule 23.01(f); *State v. Mayes*, 661 S.W.2d 608, 609 (Mo. App.1983). In light of the testimony given by Officer Pappas, defendant appears not to have been prejudiced by the late endorsement, and therefore, we deny the point.

The parties' lawyers are referred to the caveat in *State v. Dentman*, 635 S.W.2d 28, 32[7] (Mo.App.1982). Neither the prosecutor nor the defense attorney distinguished herself in compliance with the discovery rules. The defense attorney attempted to endorse at least six witnesses during the trial. The prosecutor, on four occasions, provided discovery during the trial.

Next, defendant contends the court erred in allowing testimony concerning the size of the person who made a certain palm print. The body was discovered in a closet. On the outside of the closet door, which was physically brought into the courtroom, there was a palm print, and a slide mark leading down from it, as though the hand had slid down the door. It could not be identified as decedent's print, due to the decomposition of the body. The officer testified he could make no determination as to the age of the person who left the print, but he could make a determination as to the physical size of the individual who left

the print. He then testified the "size" was of a ten to twelve-year-old child. Defendant apparently asserts this answer, claimed to be unresponsive, lacked foundation, and prejudiced him by allowing the prosecution to imply a struggle occurred between defendant and decedent.

 The admission of this evidence was error. No question is raised as to the general qualifications of the testifying officer to give an opinion concerning fingerprints. However, a proper foundation must exist for any opinion. *See, State v. Granberry*, 530 S.W.2d 714, 729–30 (Mo. App.1975). Here, the witness denied the ability to give an answer in terms of age, but then did so. The answer was unresponsive and without proper foundation, and the admission was clearly erroneous.

However, the admission of this answer was not prejudicial. As the state points out, it is common practice to refer to the size of a child in terms of its relative age. Additionally, the jury could directly observe and draw conclusions from the size of the palm print. Admission of such testimony is a matter for the discretion of the trial court, *State v. Mondaine*, 655 S.W.2d 540, 543[3] (Mo.App.1983), and we cannot say its admittance was prejudicial to defendant.

In his final point, defendant claims the court erred in failing to suppress the items seized in his room. Defendant was living rent-free in a room in Rebecca Rhoden's flat. Following his arrest, the police went to that flat, and Ms. Rhoden consented to a search. Defendant claims she had no right to consent to the warrantless search of defendant's room, and therefore the items seized should have been suppressed.

A search, made without a warrant but with proper voluntary consent, is valid. *State v. Johns*, 679 S.W.2d 253, 261[12] (Mo.banc 1984). No question exists as to the voluntariness of the consent. However, when the consent to search a location is given by a third person, the person must retain joint access to or control over that room to give effective consent to the

search. *Id.* at 262. Rhoden testified the room was actually the back porch, which had been converted into a room. Defendant paid no rent; "He was just staying there with us." The room was Rhoden's and she just let defendant "sleep on the bed there." This evidence, never challenged, established Rhoden retained access to and control over defendant's room, thus validating her consent to search. *Id.* at 262[15]; *cf. State v. Peterson*, 525 S.W.2d 599, 608–09[12] (Mo.App.1975). And, the testimony indicated most, if not all, of the items seized were found in common areas of Rhoden's flat, outside the confines of defendant's room. The point is denied.

Judgment affirmed.

DOWD, P.J., and SNYDER, J., concur.