STATE of Missouri,
Plaintiff–Respondent,

v.

Randal Lee CHEEK,
Defendant–Appellant.

No. 15327.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 26, 1988.

Motion for Rehearing or Transfer
Denied Nov. 14, 1988.

Anne Hall, Public Defender, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., for plaintiff-respondent.

HOGAN, Judge.

By seven-count information filed in the Circuit Court of Greene County, defendant Randal Lee Cheek was charged with two counts of first-degree robbery in violation of § 569.020, RSMo 1986;[1] two counts of kidnapping in violation of § 565.110; two counts of armed criminal action in violation of § 571.015.1, and one count of first-degree assault in violation of § 565.050. Defendant's punishment was assessed at imprisonment for a term of 25 years on each count of first-degree robbery; 15 years on each count of kidnapping; 25 years on each count of armed criminal action and 25 years on the count charging first-degree assault. It was ordered that the sentences be served concurrently. The defendant appeals, contending that: 1) the trial court erred in denying defendant's request for a mistrial made during the State's closing argument because the Prosecuting Attorney commented indirectly on the defendant's failure to testify; 2) the trial court erroneously received evidence of the defendant's possession of a handgun, and 3) the trial court erroneously gave and read MAI–Cr.3d 300.02 and 302.04 because those

instructions do not properly define the term "reasonable doubt." We affirm.

The defendant has not challenged the sufficiency of the evidence to sustain the judgments of conviction. Our recitation of the facts is limited to those relevant to the appeal. They are: On July 8, 1986, the defendant rented a room at the Silver Saddle Motel in Springfield, Missouri. During the late evening of July 8 and the early morning of July 9, a social gathering was held in a room registered to the defendant. A number of young men and women attended this party, including three witnesses who testified for the State, James Roy Woolery, Kelly McCurdy and Tony Lewellen. Woolery was acquainted with the defendant and Woolery invited McCurdy and Lewellen to attend the party. Woolery, McCurdy and Lewellen were "under age;" they went to the party so they could consume intoxicants. All three of the young men became intoxicated.

While they were in the motel room all three of these witnesses, Woolery, McCurdy and Lewellen, saw both the defendant and a firearm. Woolery described the weapon as "a black revolver." McCurdy believed the same weapon was a black .22 caliber handgun, but indicated by his testimony he knew very little about handguns. Lewellen described the same handgun simply as a black handgun. Woolery and Lewellen actually saw the handgun in the defendant's possession.

Officer Donald A. Clark, a Springfield Police Officer, testified that he was dispatched to the Silver Saddle Motel about 1:10 a.m. on July 9. When he arrived at the motel, Officer Clark searched the defendant's room. Officer Clark found "a girl ... and some clothing and the appearances of having had a small party." He also found "cartridges."

About 1:30 a.m. on January 9, the defendant's victims, Jay Scott Sanders and Mark Davis were sitting in Davis' car on the parking lot at Trotter's Restaurant. Trotter's Restaurant is just south of the

---

**1.** References to statutes and rules are to RSMo 1986 and V.A.M.R., except where otherwise specifically noted.

Silver Saddle Motel. The two men had bought some beer and were sitting in the car on the parking lot, drinking beer and listening to the radio. Presently the defendant approached the driver's side of the automobile. He was armed with a handgun. According to Davis, the defendant pointed the handgun "[r]ight at my head." The defendant then asked in very coarse language if Davis' automobile would run. Sanders and Davis replied that it would. The defendant got in the automobile. He ordered Sanders and Davis to get on the floorboard beneath the rear seat "or he was going to kill [them] both." The two men complied with the defendant's order. The defendant "took off" in Davis' car.

As he drove away in the automobile, the defendant told Sanders and Davis "[g]ive me your wallets or I'm going to kill you." There was no money in either wallet. The defendant became very angry. He shouted obscenities at Sanders and Davis. All the while defendant kept his handgun "over the seat," threatening Sanders and Davis. Sanders and Davis decided to resist. Davis testified that "[t]he last time that he pointed the gun up in my side I grabbed for the gun and pulled it up above me, him [defendant] and the gun both...." Sanders started choking the defendant. The car went off the road and into a ditch. The defendant, Sanders and Davis made their way out of the car.

Sanders went looking for help. Davis had wrested the handgun from the defendant, but Davis was frightened and had had no experience with handguns. The defendant "started struggling" with Davis and finally succeeded in subduing him. The defendant then told Davis " 'I'm going to chew your ear off.' " Defendant did bite part of Davis' ear off and spit it out on the ground. Such is the evidence as material to this appeal.

■ The defendant's third point—that the trial court erred in giving Instructions MAI–Cr.3d 300.02 and 302.04—requires no discussion. The defendant's argument is that these instructions erroneously define "proof beyond a reasonable doubt" as "proof that leaves [the jury] firmly con-

vinced of the defendant's guilt." The defendant's contention, as stated, is that defining proof beyond a reasonable doubt as "proof which leaves the jury 'firmly convinced' of a defendant's guilt ... reduces the State's burden below that required by due process...." This very argument was addressed and rejected by our Supreme Court in *State v. Guinan,* 732 S.W.2d 174, 177–78 (Mo. banc 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 308, 98 L.Ed.2d 266 (1987). There is no reason to discuss the point further.

■ A further assignment of error is that the trial court abused its discretion in refusing to order a mistrial during the State's closing argument because the Prosecuting Attorney commented on the defendant's failure to testify. We do not believe this point has been properly preserved for review. Upon trial, the defendant objected to the Prosecuting Attorney's comment on the ground that the comment amounted to a *direct* reference to the defendant's failure to testify. In the motion for new trial and in this court, the comment is objected to as an *indirect* comment on the defendant's failure to testify. Our courts have carefully distinguished "direct" and "indirect" comments upon an accused's failure to testify. *State v. Hill,* 678 S.W.2d 848, 850 (Mo.App.1984). Generally, points raised on appeal as to the admissibility of evidence, arguments, or statements of counsel must be based on the theory of the objection as made at trial. *State v. Lang,* 515 S.W.2d 507, 511 (Mo. 1974); *State v. Kuhrts,* 571 S.W.2d 709, 712 (Mo.App.1978). However, in the exercise of our discretion, we shall notice the point ex gratia.

■ The point must be considered in context. The defendant had evidence that the crimes with which he was charged were committed in darkness. This evidence was expanded into an argument that Sanders and Davis had misidentified the defendant. Defense counsel's closing argument was that the evidence disclosed ten (10) instances or "points" of misidentification.

In summation, the Prosecuting Attorney replied:

"You've heard both boys testify. You saw how strong they were on the witness stand that this is the man. Now, what else can the defense do in this case but attack the victims' identification? That can be done in every criminal case. We sure feel sorry for you, Mr. Victim. It sure is too bad that these terrible things happened to you, but you're mistaken, you don't know who it was that did this to you.

*I submit that they know exactly what happened.* I know—." (Our emphasis.)

Counsel for the defense then approached the bench and stated:

"MS. LYONS: The state's argument that the defendant knows exactly what happened is a *direct* comment on the defendant's failure to testify, and also moves the burden of the case beyond a reasonable doubt over on the defense in order to prove his innocence, and I move at this time that his remarks be stricken.

THE COURT: *The motion will be sustained.* Anything further?" (Our emphasis.)

The Prosecuting Attorney then advised the court that he had only intended to say that the *victims* knew exactly what had happened. The court replied that as it understood the Prosecuting Attorney's argument, it implied the defendant knew or the defense knew what happened. The jury was instructed to disregard the Prosecuting Attorney's comment but the trial court declined to declare a mistrial.

■ Undoubtedly, a prosecutor is prohibited from commenting adversely upon the accused's failure to testify. *State v. Lindsey,* 578 S.W.2d 903, 904[1] (Mo. banc 1979); *State v. Hill,* 678 S.W.2d at 850[1, 2]. As noted, our courts have carefully distinguished "direct" references to the accused's failure to testify from "indirect" references to his failure to testify, holding that both species of reference are forbidden. *State v. Hill,* 678 S.W.2d at 850. Upon the cold record presented, it is arguable that when the comment objected to is viewed in context, the reasonable inference is that the phrase "they knew exactly what

happened" referred to the victims and not to the defendant.

■ We did not, of course, hear the closing arguments. The trial court did, and it interpreted the comment as a reference, direct or indirect, to the defendant's failure to testify. The jury was instructed to disregard the Prosecuting Attorney's comment. The declaration of a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances when the prejudicial effect of an error can be removed in no other way. *State v. Davis,* 653 S.W.2d 167, 176 (Mo. banc 1983). Declaration of a mistrial rests largely within the discretion of the trial court because the trial court observes the incident which precipitates the request for a mistrial and is in a better position than the appellate court to determine what prejudicial effect, if any, the incident has on the jury. *State v. Davis,* 653 S.W.2d at 176; *State v. O'Neal,* 618 S.W.2d 31, 35[2–5] (Mo.1981); *State v. Reynolds,* 608 S.W.2d 422, 427[5, 6] (Mo. 1980). Considering the ambiguous tenor of the Prosecuting Attorney's comment and the trial court's superior opportunity to observe its effect on the jury, we cannot say the court abused its discretion in denying a mistrial.

■ The defendant's other point is that the trial court erroneously received the testimony of Officer Clark, James Roy Woolery, Kelly McCurdy and Tony Lewellen concerning the events which took place at the Silver Saddle Motel. It is argued that such evidence is inadmissible evidence of other, distinct crimes. Counsel argues that the evidence suggests the defendant was in possession of a firearm while he was intoxicated in violation of § 571.030.1(5). In the "argument" part of his brief defendant also contends there was error in admitting Officer Clark's testimony that he found cartridges in the defendant's motel room. The arguments are strained and tenuous. The possession of the cartridges of itself is not a crime. *Cf. State v. Barnes,* 693 S.W.2d 331, 333 (Mo. App.1985). The State did not present any evidence directly proving that the defend-

ant was intoxicated; the defendant concedes as much in his brief.[2]

Assuming, however, that evidence of the events which took place at the Silver Saddle Motel constituted evidence of other offenses with which the defendant was not charged, we find no reversible error. The long-established general rule is that proof of the commission of separate and distinct crimes is inadmissible unless it has some legitimate tendency to establish that the defendant is guilty of the offense with which he is charged. *State v. Shaw*, 636 S.W.2d 667, 671–72[4] (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *State v. Lasley*, 583 S.W.2d 511, 517 (Mo. banc 1979). Specifically, such evidence is admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. *State v. Shaw*, 636 S.W.2d at 672; *State v. Reese*, 364 Mo. 1221, 1226, 274 S.W.2d 304, 307 (banc 1954).

In the case at hand, the evidence concerning the party at the Silver Saddle Motel had some tendency to prove the defendant's identity. The defendant claimed and attempted to show that he was a victim of misidentification. The evidence of which the defendant complains tended to establish that the defendant was present at a motel near the parking lot from which Sanders and Davis were abducted. That evidence further established that the defendant was in possession of a handgun similar to the handgun used in committing the offenses charged. Moreover, the trial court was vested with substantial discretion in determining the extent to which the defendant was prejudiced by the admission of evidence pertaining to the events at the Silver Saddle Motel, the defendant's possession of a handgun, and the investigating officer's discovery of cartridges in his motel room shortly before his victims were

accosted. *State v. Engleman*, 653 S.W.2d 198, 199 (Mo.1983); *State v. Barnett*, 611 S.W.2d 339, 341[3] (Mo.App.1980). That court found no prejudice in the admission of the evidence of which the defendant now complains. The point is without merit.

We find no error in any respect briefed and submitted in this court. Accordingly, the judgment is affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.

---

**2.** "While there was no direct evidence that Randy Cheek was intoxicated, the jury could easily assume that he was and that he had possession of a gun." [Appellant's Brief p. 13].