**STATE of Missouri, Plaintiff–Respondent,**

v.

**Randall GAMBLE, Defendant–Appellant.**

**No. 16206.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 27, 1989.

---

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Scott B. Tinsley, P.C., Springfield, for defendant-appellant.

GREENE, Judge.

Defendant, Randall Lee Gamble, was jury-tried and convicted in the circuit court of Barry County, Missouri, of the class B felony of conspiring to sell or distribute methamphetamine, a controlled substance, for which conviction Gamble received a prison sentence of 13 years.

In his appeal, Gamble charges trial court error in 1) admitting, over objection, evidence of other crimes he committed, 2) failing to declare a mistrial after a State's witness testified he was shot as a result of his involvement in the conspiracy, 3) failing to excuse for cause a venireperson who indicated that if the State had no evidence of Gamble's guilt, he would not have been

charged with the crime, and 4) designating Gamble as a persistent offender,[1] thus enhancing his punishment, when the State had not proved such status. We affirm.

The amended information on which the State proceeded to trial charged that in February of 1987, in Lawrence County, Missouri, Randall Lee Gamble, with the purpose of promoting the sale of methamphetamine, a controlled substance, agreed with Steven Massey and Don Robbins, that one or more of them would sell the methamphetamine, and in furtherance of that conspiracy, one or more of them obtained methamphetamine. The sufficiency of the information, and the sufficiency of the evidence to sustain the charge has not been challenged on appeal.

The State's evidence consisted of the testimony of Steven Massey and Richard Myers, both of whom were admitted illegal drug dealers and coconspirators with Gamble. Massey testified that during the last part of February, 1987, he was approached by Don Robbins, and asked if he was interested in selling methamphetamine. Robbins indicated he and Massey would have to pay $1,800 an ounce for the drug, and that they could make a $200–$400 profit per ounce on the sales. Massey agreed to Robbins' proposal, and Robbins started delivering the methamphetamine to Massey, who, in turn, sold it in the Springfield area. In March of 1987, Massey was present in Robbins' Harley shop in Aurora, Missouri, when Gamble delivered four ounces of methamphetamine to Robbins, and told Robbins how long he had to raise the money to pay for it. Massey further testified the arrangement between the three men was that Gamble would supply the methamphetamine to Massey and Robbins, and that they would sell the drugs and pay Gamble his price for the drug out of the proceeds, keeping any profit for themselves.

Myers testified that he had known Gamble for several years, and was selling methamphetamine for him. On February 25, 1987, Gamble delivered four ounces of crystal methamphetamine to Myers for resale. When the arrangement began, Gamble charged Myers $1,800 an ounce for the drug, but later lowered his price to $1,600 per ounce. Myers knew Don Robbins and of his drug connection with Gamble, as Gamble had told Myers that Robbins was fronting the drugs for him on the same basis as Myers. Massey and Myers both testified that they sold the methamphetamine in question, and that Gamble received his sum of money. Neither Robbins nor Gamble testified.

In his first point relied on, Gamble contends that it was error for the trial court to permit Richard Myers to testify, over Gamble's objection, concerning Myers' drug dealings with Gamble, because such testimony constituted proof of a separate and distinct crime, and for that reason such testimony was inadmissible and prejudicial.

While evidence of other crimes is generally inadmissible, such is not the case if such evidence has a legitimate tendency to establish a defendant's guilt of the charge for which he is on trial. In such cases, evidence of other crimes is competent to prove the crime charged when such evidence tends to establish motive, intent, absence of mistake or accident, or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. *State v. V——— C———*, 734 S.W.2d 837, 842 (Mo.App.1987).

■ Gamble was charged with conspiring with Massey and Robbins to sell and distribute methamphetamine. The evidence established not only that he had done so, but that at approximately the same time he was conspiring with Myers to do the same thing. The modus operandi of the transactions was substantially the same, and the separate transactions were closely

---

**1.** The trial court did not find Gamble to be a persistent offender, as alleged by his attorney in his fourth point relied on, but did find him to be a prior offender. For reasons later stated, this difference in designation of status is immaterial.

related in point of time. Gamble's activities with Myers, as well as those with Massey and Robbins, were relevant to prove a common scheme or plan to conspire to sell illegal drugs. The fact that Myers was not named in the information is immaterial. *U.S. v. Norton*, 846 F.2d 521, 524 (8th Cir.1988). The point has no merit.

Gamble's second point relied on is that the trial court erred in denying his request for a mistrial after Myers testified that he was shot as a result of his involvement in the conspiracy. Gamble contends that such testimony was evidence of another crime, that it had no legitimate tendency to establish that he was guilty of conspiracy, and that the evidence was highly inflammatory and prejudicial.

During cross-examination of Myers by Gamble's attorney, the following exchange occurred: "Q. You've been—You were running drugs for a long time; haven't you? A. I don't any longer; but, yes, I did. It took getting shot to wake me up." No objection was made to the answer by defense counsel, who continued to question Myers regarding other matters. After defense counsel finished his cross-examination, the prosecutor conducted a redirect examination of Myers, during which the following exchange occurred:

Q. In response to Mr. Gaither's question for the reasons why you—what happened when you quit the use of drugs, did anything else—you said—He said all you got out of it was probation. Did you get personal injuries?

A. Yes, I was shot.

Q. And was that because of your involvement in this conspiracy?

A. Yes.

MR. GAITHER: Your Honor, I'm going to—

THE COURT: The objection will be sustained.

MR. SIFFERMAN: I think it's in response to—

THE COURT: Sustained.

MR. GAITHER: Your Honor, may we approach the bench?

(Counsel approached the bench and the following proceedings were had:)

MR. GAITHER: I ask—the Court sustained my objection and the jury be admonished and I ask (inaudible)

MR. SIFFERMAN: A witness can volunteered [sic] (inaudible). I did not inquire into that.

THE COURT: Well, you inquired, and the answer—

MR. SIFFERMAN: And I left it alone.

THE COURT: So you could have moved to strike it then, and I have sustained your objection. Your request for a mistrial will be denied.

(Proceedings returned to open court.)

THE COURT: The jury will be instructed to disregard the last question and any answer that may have been given. And the jury is instructed not to give any consideration to it.

MR. SIFFERMAN: No further questions.

The declaration of a mistrial is a drastic remedy, and should not be granted except in extraordinary circumstances, and the decision of whether to grant a mistrial is a matter addressed to the sound discretion of the trial court, which should be honored by the appellate courts unless there is a clear showing in the record that such discretion was abused. *State v. Cheek*, 760 S.W.2d 162, 165 (Mo.App.1988). No such showing appears here.

■ Myers' statement that he was shot as a result of his involvement with drugs was elicited by Gamble's lawyer who made no objection to Myers' remarks. When the prosecutor, on redirect examination, pressed for details regarding the shooting, defense counsel objected, and also requested a mistrial. The trial court sustained the objection, ordered the prosecutor's questions and the witness' answers stricken, and ordered the jury to disregard the question and answer, but denied the request for a mistrial. Under these facts, we cannot say that failure to declare a mistrial amounted to a clear abuse of the trial court's discretion. The point has no merit.

**824**

In his third point relied on, Gamble asserts that the trial court erred when it denied his attorney's request that venireperson Arlene Price be excused for cause because Mrs. Price had expressed the opinion during voir dire examination that the State must have evidence against Gamble to charge him with a crime, or "he wouldn't be here."

During voir dire of the entire jury panel, defense counsel was apparently trying to determine if everyone on the panel agreed with the legal principle that a defendant in a criminal case was presumed to be innocent, and it was the State's burden to prove his guilt beyond any reasonable doubt, when the following exchange with Mrs. Price occurred:

MR. GAITHER: Well, Ms. Price, let me ask you as you sit here, do you believe that the State has sufficient evidence to be bringing my client in—

MRS. PRICE: Yes, sir. (Inaudible).

MR. GAITHER: Otherwise he wouldn't be here; is that correct?

MRS. PRICE: He wouldn't be here.

MR. GAITHER: Okay. Is that— Everybody else feel like this? You know, there must be something going on or Randy wouldn't be sitting here?

MR. SIFFERMAN: Your Honor, I'm going to object.

MR. GAITHER: Anybody else feel that way?

MR. SIFFERMAN: Counsel has gone beyond what—

MRS. PRICE: (Inaudible).

THE COURT: No, excuse me. The—

MR. GAITHER: I don't mean personal. I don't mean to put words in your mouth. Go ahead.

MRS. PRICE: Well, we have to—we have to assume that the State had reasonable reasons to call a trial or it wouldn't have called a trial. Let's put it that way.

MR. GAITHER: Okay.

MRS. PRICE: I'm not saying somebody is guilty because the State called it.

I'm saying that they had to have a reason.

MR. GAITHER: Must have had some evidence.

MRS. PRICE: We have to have—We have to have both evidences in order to straighten it out. That's (inaudible).

MR. GAITHER: Okay. So you're saying Scott just couldn't flat made a mistake, he must have known what he was doing to bring this charge?

MRS. PRICE: I'm—I'm saying that when a crime is committed and they're unsure exactly what crime was committed or if a crime was committed, then that's what our courts and jury is for.

MR. GAITHER: Okay.

MRS. PRICE: You get a group of people together like this that are unbiased, and we listen to evidence from both sides, and then we decide what is right and what is wrong. It's not that the State is right to call him or that he's right to appeal or any of that sort. It's —It's the fact that it needs to be decided who was right and who was wrong. And that's what we're here for.

MR. GAITHER: The—Of course, you know—You heard the instructions the Court read.

MRS. PRICE: Right.

MR. GAITHER: And I guess that's probably what you're sort of getting back to, and I hope you all pay attention. As Randy sits here, you know, the fact that he's charged doesn't mean the State had one whit of evidence.

MRS. PRICE: You're guilty till—I mean, you're innocent—

MR. GAITHER: —until proven guilty. I know—I know what you're talking about. You just misspoke yourself. But you understand just because Randy has been brought into court doesn't mean the State has one whit of evidence? You understand that?

MR. SIFFERMAN: Your Honor—

MR. GAITHER: That's a Court's instruction, Your Honor. I'm simply restating it. I think that—

THE COURT: Well, the objection is going to be sustained. The Court has instructed the jury, and there will be other instructions which will be given during the course of the trial.

MR. GAITHER: May I have the Court's instruction, Your Honor, so I can ask specifically from the Court's instruction so I don't make a mistake on this point?

THE COURT: That request will be denied. Mr. Sanders, do you need to change the tape?

\*    \*    \*    \*    \*    \*

THE COURT: You may proceed, Mr. Gaither.

MR. GAITHER: All right. Thank you, Your Honor. Does everybody understand again the fact that a man's been charged with something is no evidence? I believe—That's what I believe the instruction said and, if I'm misquoting, I'm sure the prosecutor will object. You all understand as he sits here—the fact that he sits here is no evidence whatsoever. The fact that he's been charged is no evidence. Do you all understand that? I know, Mrs. Price, you feel there—there must be something for him to be here. But—

MRS. PRICE: That wasn't—I mean, I wasn't saying too good. But I was saying that there is—If the State feels that a crime has been committed, then the jury decides what's right and what's wrong; if they didn't, you wouldn't need a jury.

MR. GAITHER: Exactly. First of all, you realize they have to prove that a crime has been committed.

MRS. PRICE: Definitely.

MR. GAITHER: And then they have to prove that my client was involved in it?

MRS. PRICE: Yes.

MR. GAITHER: Okay. And neither of which is established as we sit here today? You understand that?

MRS. PRICE: Right.

MR. GAITHER: I mean, there's no proof at all that a crime has even been committed.

MRS. PRICE: We have to hear both evidences before we decide what's going on.

MR. GAITHER: All right. Thank you.

At the conclusion of the voir dire examination, and during a conference with the court regarding challenges for cause, the following exchange occurred between defense counsel and the trial court:

MR. GAITHER: All right. I asking [sic] about Mrs. Arlene Price, the woman in the pink on the back row, Juror No. 11, who testified that, you know, if there wasn't a case the prosecution wouldn't even be—we wouldn't even be here.

THE COURT: Well, I think that's what she initially said. But after you inquired further with respect to the presumptions of innocence and the state having to prove its case and particularly that the Defendant was, in fact, presumed to be innocent and the State had to prove him guilty, your motion to strike will be overruled.

Viewed in their entirety, Mrs. Price's answers indicate that she understood that Gamble being charged with a crime did not automatically mean he was guilty, and that the State had to prove not only that the crime in question had been committed, but must also prove that Gamble committed it. It is noteworthy that Gamble's trial counsel, who is not his lawyer on appeal, seemed to agree with Mrs. Price's analysis of the situation when he told the jury panel, after he had finished his voir dire questioning, the following:

I'm not trying to get all—I wanted the jurors to decide on the evidence, not what the prosecution may think of guilty-prone jurors or non-guilty prone jurors. That's not here. But on that same line, having been jurors, is there anybody who feels that they have some duty to convict as jurors? Okay.

I think it's probably said best by Mrs. Price. It's your job to hear the evidence

and decide on that evidence. And everybody will do that for Randy as he sits here? I've got no more questions. Thank you.

Determination of whether a challenge for cause of a prospective juror should be sustained or denied rests with the sound discretion of the trial court, whose ruling on the matter should not be disturbed unless it constitutes a clear abuse of discretion, and in determining whether a challenge for cause should be sustained, a trial court judges each case on its own particular facts. *State v. Hill,* 714 S.W.2d 687, 689 (Mo.App.1986).

The responses of Mrs. Price, considered as a whole, established her ability to be a fair and impartial juror. The trial court did not err in denying the challenge for cause. The point has no merit.

In his final point relied on, Gamble contends the trial court erred in finding that he was a persistent offender, and enhancing his punishment at sentencing through application of the persistent offender statutes. The record shows that prior to the commencement of the trial, and out of the presence of the jury, the prosecuting attorney, for the purpose of attempting to prove that Gamble was a persistent offender, as that term is defined by § 558.016.3,[2] offered in evidence certified copies of circuit court records from Barry and Stone counties which he contended showed that Gamble had been convicted in Barry County in 1982 of the felony of burglary, and had been convicted in Stone County in 1983 of the felony of stealing. § 558.021.1(2). The trial court rejected the offered evidence on the Barry County conviction because the record showed that the defendant entered a plea of not guilty, which was accepted by the court. The trial judge then turned to the Stone County record, and had this to say:

> With respect to Plaintiff's Exhibit B, again, State of Missouri, Plaintiff, vs. Randy Gamble, a Stone County, Missouri case, CR682–742F, it appears that the Defendant, Randy Gamble appeared with attorney, Stephen Seigel and entered a plea of guilty to a crime of stealing. And the Court at the time fixed sentence at three years on the charge of stealing.

> The Court is going to receive into evidence Plaintiff's Exhibit B, and same being a plea of guilty to a felony charge of stealing in the Circuit Court of Stone County, Missouri. This is what has been alleged in the amended information. The Court finds that it has pled essential facts. And the Court makes its finding that the Defendant is a prior offender beyond a reasonable doubt. And the Court, under Section 558.016 will, in fact, find the Defendant pled guilty or been found guilty of a prior felony, and that one prior felony being received into evidence as Plaintiff's Exhibit B.

There was no evidence offered by Gamble on the issue in question, but his attorney objected to the record being used as evidence against the defendant for the reason there was no evidence that the Randy Gamble named in the Stone County case was the same person as the Randall Lee Gamble charged in the present case.

■ In his brief filed here, Gamble admits that a prima facie case is made that the defendant on trial is the same person as the one named as the defendant in a certified record of a prior conviction, if the name of the defendant on trial and the person named in the certified record are the same, citing *State v. Garner,* 538 S.W.2d 937, 943 (Mo.App.1976), but contends that where a variance appears between the name contained in a prior conviction record and the name of the person on trial, the State is required to present additional evidence to show that both names identify the same person, citing *State v. Fitzpatrick,* 676 S.W.2d 831, 838 (Mo. banc

---

**2.** All references to statutes are to RSMo 1986 and V.A.M.S. (Cum.Supp.1989). Section 558.016.2 defines a prior offender as "one who has pleaded guilty to or has been found guilty of one felony." Section 558.016.3 defines persistent offender as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times."

1984). He contends that since the State presented no evidence other than the certified Stone County record, which shows the defendant's name in that case as Randy Gamble while his name is Randall Lee Gamble, the State failed in its burden of proof.

In *Fitzpatrick,* the defendant, David Fitzpatrick, was charged as a persistent offender. The prior conviction record introduced showed that David Rose was the name of the person convicted. Our Supreme Court held that because of the variance in names, the State was required to present additional evidence to show that David Rose and David Fitzpatrick were one and the same. That rationale is only common sense, but it does not apply here.

It has been held that where a defendant's first name in a prior conviction record is slightly different from the first name of the person on trial, the court may accept the prior conviction as evidence if the discrepancy was a typographical error. *State v. Williams,* 693 S.W.2d 125, 127 (Mo.App.1985). We feel the same holds true if a nickname used on the prior or present criminal charge is an accepted nickname of the person in question. A commonly known diminutive or abbreviation is sufficient to identify a person in the absence of evidence indicating that a different person is intended. *Ex Parte Elliott,* 542 S.W.2d 863 (Tex.Crim.App.1976). We notice judicially that "Randy" is an abbreviation, contraction or diminutive form of "Randall." *See State v. Cook,* 463 S.W.2d 863, 868 (Mo.1971). In addition, the absence of defendant's middle name in the prior conviction has little, if any, legal significance. *Wright–El v. State,* 760 S.W.2d 488, 490 (Mo.App.1988). The defendant in this case was apparently known by his nickname "Randy." Both witnesses referred to him as "Randy" in their testimony, as did the prosecutor and his own attorney. Under the circumstances, it was natural and proper for the trial court to conclude on a prima facie basis that the Randy Gamble named in the prior conviction and the Randall Lee Gamble named in the present charge were one and the same person. *See State v. Baugh,* 323 S.W.2d 685 (Mo.1959). Where a defendant offers no evidence to rebut the prima facie showing of a prior felony conviction, the trial court is entitled to rely on the prima facie evidence as a basis for its finding. *State v. Hines,* 726 S.W.2d 785, 787 (Mo.App.1987). While the State could have easily made a better and more complete record on the question, the record that was made was sufficient. The point has no merit.

Judgment affirmed.

CROW, P.J., and PREWITT, J., concur.