**STATE of Missouri, Plaintiff–Respondent,**

v.

**Leonard Roy McELROY, Defendant–Appellant.**

**No. 19142.**

Missouri Court of Appeals, Southern District, Division One.

Feb. 3, 1995.

Dee Wampler, Wampler, Wampler & Catt, Springfield, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Chief Judge.

Following jury trial Leonard R. McElroy (Defendant) was convicted on two counts of receiving stolen property, § 570.080, RSMo 1986, and sentenced as a prior and persistent offender to two consecutive terms of fourteen years' imprisonment. He was acquitted on two other counts of receiving stolen property. Defendant appeals the judgment of conviction. We affirm.

In four points relied on, Defendant charges the trial court erred: (1) By refusing to sustain certain of Defendant's requests to strike venirepersons for cause; (2) in its rulings on discovery issues regarding a highway patrol file on a confidential informant; (3) by overruling Defendant's objections to the prior and persistent offender evidence and by making inadequate findings regarding Defendant's status as a prior and persistent offender, and (4) failing to sustain Defendant's motion for change of judge filed after the jury verdict but before sentencing.

As none of Defendant's points challenge the sufficiency of the evidence, the facts may be briefly stated.

In 1990, Mike Rogers, a Missouri Highway Patrolman, was working undercover investigating stolen property cases. A confidential informant, Gary Wilkerson, was assisting Rogers in this effort. Wilkerson furnished Rogers with information that led Rogers to Polk County, Missouri, where he first met Defendant. When Rogers and Defendant initially met, Wilkerson, Frank Boswell, and Defendant's son, Paul, were also present. During their first meeting, as they discussed stolen property, Defendant told Rogers "he could get [him] anything [Rogers] wanted."

Later, during their second meeting, as they discussed what kinds of stolen property Defendant might have for sale, Rogers told Defendant he was mostly interested in stolen motor vehicles, especially late model four-wheel-drive pickups or sports cars, as he had an outlet for them in Kansas City.

In a follow-up contact in December 1990, Defendant told Rogers "he had a guy that was going to be bringing him stuff all week." On December 24, 1990, Defendant sold Rogers a 1989 Chevrolet pickup truck for $1,800. The truck was stolen on December 20, 1994, from John O'Neil near Nixa, Missouri.

As part of the investigation of Defendant's activities, a search warrant for his farm was executed on June 18, 1991. Over 100 items of property were seized, including parts of an S10 Chevrolet Blazer motor vehicle. At trial, Virgil McCall of Polk County, identified the Blazer recovered from Defendant's farm as

belonging to him. It had been stolen May 18, 1991.

Defendant was charged and convicted of receiving the stolen property that belonged to O'Neil and McCall. This appeal followed.

## JURY SELECTION

■ Defendant states in his first point that the trial court erred in overruling his challenge for cause to eight venirepersons. Six of the eight challenged venirepersons did not serve on the jury, however, because they were removed as the result of Defendant's preemptory strikes. The state argues that because of § 494.480.4, RSMo Supp.1993, and cases interpreting it, we need only review Defendant's challenges to the two venirepersons who actually served on the jury.[1] We agree.

■ Under the present version of § 494.480.4, failure to strike an unqualified venireperson for cause is not reversible error of law unless the unqualified juror actually served on the final jury. *State v. Wise,* 879 S.W.2d 494, 512 n. 9 (Mo. banc 1994). As § 494.480.4 is procedural in nature, its retroactive application does not constitute an *ex post facto* violation. *State v. Lawson,* 876 S.W.2d 770, 777[15] (Mo.App.1994); *State v. Wings,* 867 S.W.2d 607, 609[4] (Mo.App. 1993). Based on current law, Defendant is not entitled to appellate relief as to the six venirepersons challenged who did not serve.

Ivan Massey and Karen Owens were the venirepersons who served as jurors after Defendant's challenge for cause as to them was overruled. On appeal, Defendant contends that his challenge to Massey should have been sustained because of Massey's voir dire answer that Defendant's failure to testify would indicate guilt. However, at trial Defendant's challenge of Massey did not present that issue to the court. Instead, it took the following form:

"MR. WAMPLER (defense counsel): We're asking that Jurors 14, 15—

THE COURT: All right. Let's see. For the record, 14 is—

MR. WAMPLER: Ronald Garrett and Ivan Massey.

THE COURT:—Ronald Garrett. Let's see. Massey. Okay. What was wrong with them?

MR. WAMPLER: I can't remember, but the record will show what their answers were. And they indicated they'd be biased in favor of the State and against the Defendant in response to my questioning."

As to Owens, Defendant argues on appeal that his challenge to her should have been sustained because of her voir dire answers that (1) Defendant's failure to testify would suggest his guilt, (2) filing of a charge was some evidence of guilt, and (3) she might not be independent, i.e., she might cave in against her own judgment if eleven other jurors had a different view.[2] However, as with Massey, Defendant's objections to Owens, as voiced at trial, were not fact specific and did not present the same issues that he now attempts to present. Instead, they took the following form:

"MR. WAMPLER: Wanda Allen, No. 40. Karen Owens, No. 41. They indicated that they tend to believe the Defendant guilty and didn't like his appearance, and they also gave other answers that would disqualify them.

THE COURT: Well, I don't think they said they didn't like his appearance. I think that was just two of them.

MR. WAMPLER: Said they didn't like it and they'd both tend to think he's guilty.

THE COURT: Well, I'm not going to take them off.…"

1. After this case was tried, § 494.480 was amended to include the following:
 "4. The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant."

2. The record does not reveal that the answers by Massey and Owens were exactly as Defendant characterized them in his brief. However, because of our disposition of this point, we need not point out the discrepancies.

Finally, we note that the allegations of error in Defendant's motion for new trial regarding challenges for cause read:

> "[T]he trial court erred in failing to grant and sustain Defendant's Motion to Strike Venireman for Cause, specifically Venireman No.... 15 [and] 41 ... in that each of the jurors expressed sufficient grounds for prejudice against Defendant, and should have [been] stricken herein...."

■ A trial court has broad discretion in ruling on challenges for cause. *State v. Harris,* 870 S.W.2d 798, 805 (Mo. banc 1994). Appellate courts will not disturb a trial court's ruling on a challenge for cause unless it constitutes a clear abuse of discretion and results in a genuine probability of injury to the complaining party. *Id.*

■ "[A] challenge for cause requires the party seeking removal to state the specific reason why that venireperson is not qualified to serve and to convince the judge of the validity of that reason." *State v. Debler,* 856 S.W.2d 641, 645[1] (Mo. banc 1993). A challenge for cause must be "clear, definite." *See State v. Brown,* 364 Mo. 759, 267 S.W.2d 682, 690[8] (1954).

■ With certain exceptions not here applicable, in a jury-tried case allegations of error to be preserved for appellate review must be included in a motion for new trial. Rule 29.11(d). This includes allegations of error in the selection of the jury. *State v. Robinson,* 825 S.W.2d 877, 879[5] (Mo.App. 1992).

■ Here, Defendant's challenge for cause to venirepersons Massey and Owens at the close of voir dire was not "clear, definite" or "specific." Neither at trial nor in the motion for new trial did Defendant challenge Massey because of his answer that Defendant's failure to testify would indicate guilt. Likewise, the reasons given the trial judge for Defendant's challenge of Owens were nonspecific, unclear, and indefinite reasons and were not the reasons now assigned on appeal. Thus, the point regarding Massey and Owens was not presented to the trial court and preserved for our review. *Brown,*

267 S.W.2d at 690; *State v. Martin,* 815 S.W.2d 127, 129 (Mo.App.1991).

■ The fact that the jury acquitted Defendant on two other counts of receiving stolen property suggests that no manifest injustice or miscarriage of justice resulted from Massey and Owens serving on the jury. We find no plain error under Rule 30.20. Point I is denied.

## DISCOVERY ISSUE

Defendant's second point is that the trial court committed reversible error by refusing to impose sanctions against the state, including dismissal of the charges, for its failure to allow inspection and copying of a highway patrol file regarding one Gary Wilkerson, a confidential informant.

In 1990, Wilkerson was in the car repair business and was working with the highway patrol as a confidential informant. Wilkerson furnished information to the highway patrol about Defendant and his activities. The informant was also present when a highway patrolman, working undercover, first met Defendant and bought property from him. As a discovery request, Defendant asked that he be permitted to inspect and copy a file maintained by the highway patrol regarding Wilkerson. When such request went unanswered, Defendant moved for an order "quashing, striking and suppressing all testimony of [the state's] witnesses" or dismissing the charges.

At a pretrial hearing to determine the propriety of Defendant's requests, defense counsel asserted that the highway patrol file on Wilkerson "would have provided impeaching information for me." Continuing, counsel told the trial court, "Wilkerson was an eyewitness to each and all of the counts ... [who] knows information. He would testify on behalf of the Defendant. He's a valuable witness. And the defendant can't locate him." Defense counsel argued that "[I]f ... they'd give me the file on ... Wilkerson ... I'd know more about him and could locate him." The state pointed out that Wilkerson was not a witness it was going to call, he was not endorsed as a state's witness, and the prosecutor had furnished Defendant with

Wilkerson's name and last known address several months before trial. The trial court denied Defendant's motions.

■ "Generally, communications made by informers to government officials are privileged and need not be disclosed." *State v. Amrine,* 741 S.W.2d 665, 671[7] (Mo. banc 1987). Such rule is founded upon public policy considerations—the public interest in effective law enforcement. *State v. Yates,* 442 S.W.2d 21, 25 (Mo.1969). "By preserving their anonymity citizens are encouraged to communicate to law enforcement officers their knowledge of the commission of crimes." *Id.* The privilege is designed for the protection of the public interest and not for the protection of the informant. *Id.*

■ Concepts of fundamental fairness create exceptions to this "confidential informant" privilege in some cases. *Amrine,* 741 S.W.2d at 671. Whether disclosure must be made in a criminal case depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 629, 1 L.Ed.2d 639, 646 (1957).

> "*Roviaro* declares that decisions on disclosure should be fact specific; no fixed rule on disclosure is justifiable.... Whether disclosure is 'essential to assure a fair determination of the issue ... is for the trial court in the first instance.' *State v. Edwards,* 317 S.W.2d 441, 447 (Mo. banc 1958). It is 'a matter addressed to the sound discretion of the trial court.' *State v. Hanson,* 587 S.W.2d 895, 903 (Mo.App. S.D.1979)."

*State v. Toler,* 823 S.W.2d 140, 142 (Mo.App. 1992).

■ In reviewing a trial court's ruling of a discovery issue, appellate courts must balance the cruciality of the disclosure to the defense against the state's need for nondisclosure. *State v. Payne,* 660 S.W.2d 24, 25[3] (Mo.App.1983). It is a defendant's burden to develop a record showing the need for disclosure. *Id.* Disclosure is not required where the evidence is on "minor or collateral" is-

sues. *State v. Sweeney,* 701 S.W.2d 420, 426[8] (Mo. banc 1985).

■ In this case, Defendant failed to develop a record showing the need for disclosure of the highway patrol's file on Wilkerson. The state furnished Defendant both the name and last known address of the informant. Nothing in the record suggests that the state concealed information about Wilkerson's whereabouts or furnished Defendant with false information on that subject. Although defense counsel claimed in oral argument that Defendant could not locate the witness, there is nothing in the record to show what efforts were made to find the informant. *See State v. Sproul,* 786 S.W.2d 169, 172 (Mo.App.1990).

Defendant never asked for an in camera inspection of the highway patrol's file to determine if it contained information that might aid Defendant in locating the informant, consequently, there is nothing in the record to show that disclosure of the subject file would increase the probability of finding Wilkerson. *See State v. Bryant,* 705 S.W.2d 559, 561 (Mo.App.1986). Also, it is not apparent that Wilkerson's testimony would have affected the outcome of the trial, especially in view of the other evidence that connected Defendant with these crimes. *Id.* Under the circumstances, Defendant has not established that he was prejudiced by the trial court's rulings regarding this file and that the trial court abused its discretion in those rulings. *See State v. Funkhouser,* 729 S.W.2d 43, 45 (Mo. App.1987). Point denied.

## PRIOR AND PERSISTENT OFFENDER ISSUE

In part, Defendant's third point charges that the trial court erred in overruling Defendant's objections to the state's evidence of Defendant's prior convictions and, consequently, he should not have been tried and sentenced as a "prior offender" under § 558.016, RSMo 1986. This part of Point III has two prongs: First, that the exhibits offered failed to show that Defendant voluntarily waived counsel in the prior offenses, and, second, the state's evidence was not sufficient to "prove the identity of [Defendant] in the prior offenses."

A third claim under Point III is that the trial court committed plain error by not making adequate findings of fact that Defendant was indeed a prior and persistent offender.

Our initial discussion is of Defendant's claim that the state's exhibits did not adequately show that he voluntarily waived counsel. The evidence of Defendant's prior convictions was (1) a certified copy of a docket sheet from the criminal record book of St. Clair County, Missouri, which records the conviction of "Leonard Roy McElroy" for incest on December 8, 1975 (exhibit 1–A); (2) a certified copy of a criminal docket sheet in case No. 230 from Searcy County, Arkansas, stating that "Roy McElroy" pled guilty to a charge of "grand larceny" on April 29, 1958 (exhibit 2–A), and (3) a certified copy of the "Penitentiary Commitment" of "Roy McElroy" from Searcy County, Arkansas, Case No. 230 (exhibit 3–A).

It is clear from exhibit 1–A that "Leonard Roy McElroy" was represented by "self-employed" counsel at the time of his Missouri incest conviction. Defendant does not argue otherwise.

As to the Arkansas case, exhibit 2–A plainly says that, prior to entertaining his guilty plea, the Arkansas court "advised [Defendant] of [his] rights to counsel and [he did] not desire counsel." Where certified copies of the records concerning prior convictions, *when reasonably construed,* show that a defendant was advised of his right to counsel and waived that right, then the record offered is both admissible and sufficient to invoke the application of prior offender status. *State v. Welty,* 729 S.W.2d 594, 602 (Mo.App.1987) (emphasis in original); *State v. Wilson,* 684 S.W.2d 544 at 547[5]. The failure of such a record to recite that the accused voluntarily waived counsel, either expressly or in writing, does not render such record void or insufficient for enhancement purposes. *Dover v. State,* 725 S.W.2d 915, 919[2] (Mo.App.1987). As in *Wilson* and *Welty,* the present record is not silent and it reasonably demonstrates waiver. Defendant's argument to the contrary is denied.

Defendant's second complaint under Point III is that his name as it appears on the information in this case, Leonard R. McElroy, differs from the name of the defendant in the 1958 Arkansas proceeding which was Roy McElroy. He therefore argues that the state has failed to prove that he is one and the same person as the defendant who was convicted in 1958.

When the name that appears in a prior conviction contains a variance from the name of the defendant on trial, some additional evidence is generally required to prove identity of the defendant on trial with the person previously convicted. *State v. Fitzpatrick,* 676 S.W.2d 831, 838[19] (Mo. banc 1984). However, a record that demonstrates that a defendant uses or is commonly known by the name that appeared in the prior conviction is sufficient to establish prima facie identity. *Fitzpatrick,* 676 S.W.2d at 838–39[20]. *See also Ballard v. State,* 615 S.W.2d 589, 592 (Mo.App.1981).

Such a record existed here. First, this record is replete with pleadings and other documents filed by Defendant that identify Defendant as either "Leonard Roy McElroy" or "Roy McElroy." Examples include defense counsel's Entry of Appearance, Motion to Dismiss and For Bill of Particulars, Motion to Suppress Alleged Prior Conviction, Motion to Suppress Search Warrant, Motion for Discovery, Motion in Limine, Motion to Dismiss for Failure to Make Discovery, and defense counsel's April 11, 1993, letter to the prosecuting attorney. Second, when defense counsel referred to Defendant during voir dire, he most often referred to him as Roy or Roy McElroy, occasionally as McElroy or Mr. McElroy, but never as Leonard or Leonard R. McElroy. Finally, as he cross-examined Rogers, defense counsel referred to Defendant as "Leonard Roy McElroy" on at least one occasion.

No point was made in Defendant's Motion to Suppress Alleged Prior Conviction that he was not the Roy McElroy convicted in Arkansas in 1958. That, plus defense counsel's repeated pleading and trial references to Defendant as either Roy or Leonard Roy McElroy, amounts to a tacit concession that Defendant's middle name is Roy although he

was not charged under that name. *See State v. Baugh*, 323 S.W.2d 685, 691 (Mo.1959).

Under the circumstances, it was natural and proper for the trial court to conclude on a prima facie basis that the Roy McElroy named in the prior Arkansas conviction and the Leonard R. McElroy named in the present information, were one and the same person. *See State v. Gamble*, 781 S.W.2d 820, 827 (Mo.App.1989). As Defendant offered no evidence to rebut the prima facie showing of the prior felony convictions, the trial court was entitled to rely on the prima facie evidence as a basis for its finding. *Id.* Defendant's argument to the contrary is denied.

Lastly, Defendant contends in Point III that he was improperly sentenced as a persistent offender under § 558.016, RSMo 1986, because the trial court did not make "adequate findings of fact that [Defendant] was indeed a prior and persistent offender." He requests plain error review of this claim, citing as his only authority, *State v. Thompson*, 629 S.W.2d 361 (Mo.App.1981) [*approved subject to* 629 S.W.2d 369 (Mo. banc 1982), *vacated on other grounds sub nom. Missouri v. Kane*, 459 U.S. 1193, 103 S.Ct. 1172, 75 L.Ed.2d 424 (1983)]. Defendant's reliance on *Thompson* is misplaced, however.

The version of § 558.021.1(3) applicable in *Thompson* was enacted in 1977 and effective January 1, 1979. It provided:

"1. The court shall not impose an extended term under section 558.016 unless

. . . .

(3) The court determines the existence of the basis for the extended term and makes specific findings to that effect."

By a 1981 amendment, the legislature revised § 558.021.1(3) to provide:

"1. The court shall find the defendant to be a prior offender, persistent offender, or dangerous offender, if

. . . .

(3) The court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender, persistent offender, or dangerous offender."

In applying the then-applicable version of § 558.021.1(3), the *Thompson* court stated, "The statute contemplates that the [prior] convictions be found according to indictment, that the proof shall conform with the charge, and that *the findings describe the offenses which constitute the proof.*" 629 S.W.2d at 369 (our emphasis). Under the present version of § 558.021.1(3), "so long as there is evidence to support findings of fact required to meet the present definition of persistent offender, the failure of the trial court to make specific findings has been labeled a 'procedural deficiency'. . . ." *State v. Barnard*, 678 S.W.2d 448, 453 (Mo.App.1984) (quoting *State v. Bryant*, 658 S.W.2d 935, 940 (Mo.App.1983)).

Here, there was substantial argument, discussion, and colloquy between the prosecutor, defense counsel, and the trial court regarding the state's evidence that Defendant was a prior and persistent offender. That evidence, i.e., exhibits 1–A, 1–B, and 1–C, was examined and considered by the trial court on two separate occasions. When the trial court finally admitted those exhibits, it immediately found that "Mr. McElroy is a prior and persistent offender." We find apropos this passage from *State v. Greathouse*, 694 S.W.2d 903, 911[18] (Mo.App.1985):

"In the case before us, the findings could have been more specific, but the concern for due process is focused upon the existence of independent evidence sufficient to support the enhancement of the defendant's sentence and not upon the particularity of the trial court's finding. The trial court's finding is sufficient to show it relied on the evidence presented."

Under the circumstances, the trial court's failure to be more specific in its findings and declare that a factual basis existed does not work a manifest injustice on Defendant or result in a miscarriage of justice. The evidence adduced by the state via exhibits 1–A, 1–B, and 1–C was sufficient to satisfy the requirements of § 558.021.5, RSMo 1986, and support the trial court's finding that Defendant was a prior and persistent offender as defined by that enhancement statute. Point III is denied.

## POSTCONVICTION REQUEST FOR CHANGE OF JUDGE

In his final point, Defendant contends that the trial court committed reversible error by not sustaining his post-trial motion for a change of judge. His point reads:

"The trial court erred in failing to sustain [Defendant's] motion for change of judge after the jury verdict, but before sentencing, in that the trial judge demonstrated extreme bias and prejudice by arriving late for the sentencing, reading the presentence investigation, revoking [Defendant's] bond and leaving the courthouse without consulting with either [Defendant] or [Defendant's] counsel who were present for the sentencing all which demonstrated bias and prejudice against [Defendant] or [Defendant's] counsel in that [Defendant] was denied the right to be sentenced by a fair and impartial judge."

Background facts as gleaned from the record follow. After the jury verdict, Judge Knust scheduled Defendant's sentencing for June 14, 1993, at 1:00 p.m. Judge Knust arrived at the Dallas County Courthouse at approximately 1:10 to 1:15 p.m. on June 14, 1993, at which point court personnel told him that Mr. Wampler [Defendant's lawyer] was involved in a preliminary hearing in another case that involved some fifteen witnesses. Judge Knust decided to reschedule Defendant's sentencing for June 17, 1993. He then went to the circuit clerk's office where he examined Defendant's file. He found that on June 3, 1993, Mr. Wampler had moved to withdraw as Defendant's lawyer. Judge Knust also read a presentence investigation on Defendant and found that it was "less than favorable toward [Defendant]." Based on the unfavorable report and the filing of defense counsel's motion to withdraw, Judge Knust concluded that the amount of bond should be reconsidered. He then made the following docket entry:

"Def's atty unavailable for sentencing, which is continued to 6–17–93 at 1 PM. Def's bond revoked. Clerk to notify attys."

Upon learning of Judge Knust's order, Defendant moved for a change of judge, saying that he and his lawyer were present in the courtroom at the time scheduled for the sentencing and that, under the circumstances, the June 14, 1993, order demonstrated Judge Knust's bias and prejudice against Defendant.

Initially, we observe that in 1992 Defendant exercised his right to a peremptory change of judge under Rule 32.07. His motion in that regard was sustained and Judge Knust was assigned to hear the case as of August 4, 1992. Thus, the change of judge motion filed June 17, 1993, was Defendant's second request to disqualify a judge.

Under our rules, statutes, and decisions, a second or successive disqualification of a trial judge is not authorized on the ground of "prejudice." *State v. Hornbuckle*, 746 S.W.2d 580, 585 (Mo.App.1988); Rule 32.09. *See Brown v. State*, 821 S.W.2d 113, 117[9] (Mo.App.1991). Simply stated, the policy of our law allows only one change of judge is to be granted for prejudice. *Hornbuckle*, 746 S.W.2d at 585. Consequently, there is no legal ground under Rule 32.07 for Defendant to have a second judge. *Brown*, 821 S.W.2d at 117[9].

Next, we look briefly at Rule 32.09(c). It provides that nothing in "Rules 32.01 through 32.09, inclusive, shall prohibit a judge from ordering a change of ... judge when fundamental fairness so requires." Rule 32.09(c) is not a rule designed "to obtain a second peremptory change of judge, but is a safety net to provide an option for any successor judge to recuse himself" when "fundamental fairness" so requires. *Hornbuckle*, 746 S.W.2d at 585[7].

The determination of when fundamental fairness requires a judge to disqualify under Rule 32.09(c) is a discretionary matter best left to the trial judge. *State v. Erickson*, 793 S.W.2d 377, 381 (Mo.App. 1990). A judge is entitled to the presumption that he will not undertake to preside in a trial or hearing in which he cannot be impartial. *State v. Hoeber*, 737 S.W.2d 484, 486[3] (Mo.App.1987); *State v. Presley*, 694 S.W.2d 867, 869[2] (Mo.App.1985).

Here, there are no objective facts in the record which cast any doubt upon the

presumption that Judge Knust was free of bias and prejudice. 694 S.W.2d at 869. Substantially less than the maximum sentence was imposed. The presentence investigation report characterized by Judge Knust as "less than favorable" to Defendant was undoubtedly a factor in assessment of punishment.

 The record on appeal should contain all of the record, proceedings, and evidence necessary to a determination of all issues being presented to appellate court for decision. *State v. Forister*, 823 S.W.2d 504, 508[6] (Mo.App.1992). Defendant had the duty to prepare and file a complete record on appeal. *State v. Dunn*, 817 S.W.2d 241, 244[6] (Mo. banc 1991); Rule 30.04(c). Defendant did not file the presentence investigation report with this court. We presume, in its absence, that the report supported the presumption that Judge Knust was free of bias and prejudice in assessing punishment.

The defendant here received absolute impartiality by the trial judge to which he is entitled. *State v. Davis*, 653 S.W.2d 167, 177[24] (Mo. banc 1983). This court does not find in the record any demonstrable bias by Judge Knust against defendant, his witnesses or his lawyer, or any favoritism by him toward the state, the prosecuting attorney, or the state's witness. We reject Defendant's argument that the revocation of Defendant's bond on June 14, 1993, compelled a finding to the contrary. The record demonstrates Judge Knust afforded Defendant a fair sentencing as measured by the highest standard of judicial skill and impartiality.[3] *Presley*, 694 S.W.2d at 869. Point denied.

Judgment affirmed.

FLANIGAN and MONTGOMERY, JJ., concur.

---

**3.** Defense counsel's derogatory statements about Judge Knust as found in Defendant's brief, are unsupported, ill-advised, and should not have been made.